LEROY E. SWEENEY *vs.* SCHOOL COMMITTEE OF REVERE.

WILLIAM F. POLLARD, JR., *vs.* SAME.

Suffolk.     March 14, 1924. — June 13, 1924.

Present: RUGG, C.J., BRALEY, DECOURCY, CROSBY, & CARROLL, JJ.

*School and School Committee.   Mandamus.*

The school committee of Revere, consisting of seven members, by a vote of five to two adopted a vote purporting to " abolish " the office of assistant principal in the senior high school and to set the salary of the then incumbent of the office, who had been elected a teacher six years previously, at a less amount than that which he previously had been voted. The action was not recommended by the superintendent of schools. The abolition of the office was not essential. The incumbent of the office was not objectionable nor incompetent, and no notice of the intended action was given to him. Two members of the committee, who voted in favor of the action, were actuated by feelings of political resentment and ill will more or less openly expressed and exhibited. In a petition for a writ of mandamus to reinstate the incumbent of the office, it was *held,* that

(1) Evidence tending to show the motives, individually or collectively, of members of the school committee who voted in favor of the action was admissible;

(2) The conduct of two members of the committee, whose votes were essential to the passage of the vote, showed that their votes were not cast upon the merits of the question, in the interest of the public welfare, but were cast as a convenient and effective means of displacing the petitioner from his position because of his political views, which did not appear at any time to have been expressed improperly;

(3) The nominal purpose of the vote was not controlling, and it must be judged by its real purpose;

(4) The vote was in violation of G. L. c. 71, § 42;

(5) The writ of mandamus was ordered to issue.

At the hearing of another petition of a like nature, by the principal of a junior high school, who nine years before had been elected as a principal of a grammar school and whose position had been " abolished " by the same vote above described, an auditor found that the petitioner " has not satisfied me that personal hostility . . . was the controlling factor in the action of these three respondents." The petitioner was the only person within his class. *Held*, that the vote of the board was not in violation of either § 42 or § 43 of G. L. c. 71.

Two PETITIONS, filed in the Supreme Judicial Court for the county of Suffolk on June 21, 1923, the first being for a writ of mandamus directing the respondents to reinstate the petitioner as principal of the junior high school in Revere at his former salary of $2,762.50, and the second petition being for a like writ directing the reinstatement of the petitioner therein as assistant principal of the senior high school at his former salary of $2,600.

The petitions were referred to the same auditor and were ordered to be tried together. From the auditor's reports it appeared that in each case the petitioner contended that he had been illegally removed from office in violation of G. L. c. 71, § 42, and that his salary had been illegally reduced in violation of § 43 of that chapter; that the abolition of the position he formerly held " was a mere pretence and was only done for the purpose of dismissing your petitioner and done solely for political reasons and was not a laudable abolition of an unnecessary position, and was done for the purpose of evading the provisions of the statute of the Commonwealth and not for the best interests of the public schools of the city of Revere."

The respondents contended in each case that the petitioner therein had not been dismissed as a teacher but that the so called office which he formerly held was " a mere designation of the specific duty which the petitioner was to perform and that it was within the general power of the school committee to designate other duties for the petitioner to perform within· the scope of his general employment as a teacher." They also relied upon provisions of the charter of the city of Revere that the management and control of the schools should be vested in the school committee.

The respondents also contended that their motives, individually or collectively, could not be made the subject of inquiry in the proceedings but that, if such inquiry were proper, the abolition of the office which the petitioner in each case previously held was done in good faith and was not a mere pretence for the purpose of dismissing the petitioner.

In the second case, the respondents also contended that the salary of the petitioner had not been reduced since he never had received and never was voted a salary in excess of $2,500. In the first case, it was not disputed that the petitioner's salary had been reduced from $2,762.50 to $2,500.

Other material findings by the auditor are described in the opinion.

Upon the filing of the auditor's report, the cases were heard by *Braley*, J., who found the facts as stated in the auditor's reports and, at the request of the parties, reserved the cases on all questions of law for determination by the full court.

*H. Parker*, for the petitioners.

*S. R. Cutler*, for the respondents.

BRALEY, J. A majority of the respondents, who at the time comprised the school committee of the city of Revere consisting of seven members, passed on May 22, 1923, the following vote, " That the offices of Assistant Principal in the Senior High School and Principal in the Junior High School be abolished and that Mr. Sweeney and Mr. Pollard be retained at $2,500 each as teachers and that the Superintendent of Schools be given authority to assign them to their duties." The petitioners, to whom the secretary of the committee sent copies of this vote, were teachers in the

public schools of the city.    The petitioner Sweeney had been duly elected February 15, 1914, as principal of the Abraham Lincoln School, a grammar school, and since March 1, 1914, to the date of the vote, had performed the duties of principal of that school as well as the duties of principal of the Junior High School, receiving for his services an annual salary of $2,762.50.    The petitioner Pollard was duly elected a teacher in June, 1917, and from September, 1921, to the date of the vote had continuously performed the duties of assistant principal in the senior high school.

We discover no reversible error in the admission of evidence. It is shown by the record, although denied by the respondents, that at a meeting of the committee on May 9, 1923, it was voted that Pollard's salary for the years 1923 and 1924 had been fixed at $2,600, and a copy of that vote was duly sent to and received by him.    If the votes stand, it is apparent that the annual salary of Sweeney would be at the rate of $2,500, while the salary of Pollard would also be $2,500.    The auditor reports in substance that the superintendent of schools had made no recommendation, that these positions should be abolished, or that the petitioners should be dismissed from their respective positions; nor does it appear that any economic reasons, nor want of competency, and efficiency of the petitioners actuated a majority of the committee by whom the vote on its face appears to have been passed without any notice by the committee of their intended action being given to either petitioner.    It is found, that the abolition of the position of assistant principal of the senior high school was not essential to the proposed consolidation of the senior and junior high schools under one head.    And that under such consolidation the administrative duties of the principal of the combined schools would be so increased, that the position of assistant principal at least would be as essential as it was before such reorganization.

It is provided by G. L. c. 71, §§ 41, 42, 43, as follows:

" Section 41.    Every school committee, except in Boston, in electing a teacher or superintendent, who has served in its public schools for the three previous consecutive school years, other than a union or district superintendent, shall

employ him to serve at its discretion; but any school committee may elect a teacher who has served in its schools for not less than one school year to serve at such discretion.

"Section 42. The school committee may dismiss any teacher, but in every town except Boston no teacher or superintendent, other than a union or district superintendent, shall be dismissed unless by a two thirds vote of the whole committee. In every such town a teacher or a superintendent employed at discretion under the preceding section shall not be dismissed unless at least thirty days prior to the meeting, exclusive of customary vacation periods, at which the vote is to be taken, he shall have been notified of such intended vote, nor unless, if he so requests, he shall have been given a statement by the committee of the reasons for which his dismissal is proposed; nor unless, in the case of a teacher, the superintendent shall have given the committee his recommendations thereon. Neither this nor the preceding section shall affect the right of a committee to suspend a teacher or superintendent for unbecoming conduct, or to dismiss a teacher whenever an actual decrease in the number of pupils in the schools of the town render such action advisable. No teacher or superintendent who has been lawfully dismissed shall receive compensation for services rendered thereafter, or for any period of lawful suspension followed by dismissal.

"Section 43. The salary of no teacher employed in any town except Boston to serve at discretion shall be reduced without his consent except by a general salary revision affecting equally all teachers of the same salary grade in the town. The salary of no superintendent so employed shall be reduced without his consent until at least one year after the committee has so voted."

A full perusal of the record clearly shows, that at least Murray and Reilly, two of the members, in voting for the changes were in the case of Pollard actuated by feelings of political resentment and ill-will more or less openly expressed and exhibited. See G. L. c. 71, § 39. The votes of these respondents were not cast upon the merits of the question, whether the position held by Pollard should be abolished,

in the interest of the public welfare, but were cast as a convenient and effective means of displacing him from his position because of his political views, which do not appear at any time to have been improperly expressed. The full committee, as we have said, consisted of seven members, and, two members who opposed the change having voted in the negative, the vote failed of the necessary two thirds unless the votes of Murray and Reilly were counted. " We do not consider that we are required to allow such a board to nullify the plain and salutary provisions of this statute by simply covering their unlawful act with a virtuous name. There is a real and fundamental distinction between the laudable abolition of an unnecessary position," and the elimination of a faithful teacher, " in violation of the rights secured to him by statute; and the latter action can neither be concealed nor protected by a pretense, that it was the exercise of the former right." *Garvey* v. *Lowell,* 199 Mass. 47, 49, 50. The committee, moreover, to whose attention the statute had been expressly called by one of the members before this vote was taken, could not do indirectly that which they could not do directly. The petitioner Pollard as assistant principal in the senior high school under the statute could not be dismissed unless he received at least thirty days notice prior to the meeting at which the intended vote was to be taken. The real purpose of the proceedings having been as previously described, the committee could not, by the mere phraseology used, evade the statute and discharge him without an opportunity to be heard.

But as to the petitioner Sweeney, the auditor reports, that the petitioner " has not satisfied me that personal hostility . . . was the controlling factor in the action of these three respondents." And he also finds that " the vote of May 22 did not purport to ' get rid of ' the petitioner, nor was that its effect. It did purport to change the duties to which he was assigned and to reduce his salary and such in my opinion was its effect. I cannot infer that it was a pretence and device to do something which it did not purport to do. . . . I do find that hostility toward the petitioner on the part of these three respondents [Murray, Reilly and

Noone] existed, and although I am not satisfied that it was their controlling motive, I am constrained to find that it had some influence on their action." It is manifest on these findings that Murray and Reilly were not actuated or controlled by a feeling of personal hostility or ill will toward this petitioner, and their votes in his case cannot be impeached. The effect of this vote upon the salary of Sweeney is not within G. L. c. 71, § 43, because he was the only person of his class.

The result is, that in Pollard's case a writ of mandamus with costs is to issue, reinstating him in his former position as of May 22, 1923. *Duffey* v. *School Committee of Hopkinton*, 236 Mass. 5. But in Sweeney's case the petition must be dismissed.

*So ordered.* ·