LOUIS M. BOODY *vs.* SCHOOL COMMITTEE OF BARNSTABLE.

Barnstable.     May 21, June 1, 1931. — June 23, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & FIELD, JJ.

*School and School Committee.   Contract,* What constitutes.   *Words,*
"Teacher."

One who was elected by the school committee of a town subject to G. L.
c. 71, § 4, on tenure at its discretion, to be supervising principal of
the high and junior high schools at a certain salary performed those
duties for one school year.   The school committee then, acting in
good faith, voted to change his duties to those of a teacher of cer-
tain subjects in the high school, without a change in salary.   The
vote was taken without notice to him, and was by a majority only
of the school committee.   He brought a petition for a writ of
mandamus to compel his recognition as supervising principal.   *Held,*
that
   (1) The dismissal contemplated by G. L. c. 71, § 42, as amended
by St. 1921, c. 293, is a complete separation of a teacher from the
schools, and not a mere change in duties; and that statute was in-
applicable;
   (2) In the circumstances, there was no distinction between a princi-
pal and a teacher;
   (3) The vote of the school committee was within its powers al-
though taken by a majority only of the committee;
   (4) The petitioner had no contract rights with the school commit-
tee which entitled him to maintain the petition;
   (5) The petition could not be maintained.

PETITION for a writ of mandamus, filed in the Supreme
Judicial Court for the county of Barnstable on December
4, 1930, and afterwards amended, described in the opinion.

The case was referred to an auditor.   It was agreed that
the town of Barnstable was subject to G. L. c. 71, § 4.
Other material facts found by the auditor and by *Carroll,* J.,
by whom the case subsequently was heard, a ruling by the
single justice and his disposition of the petitioner's requests
for rulings, are stated in the opinion.   One of the peti-
tioner's requests for rulings was as follows:

"27. There was a definite contract between the petitioner

and the school committee of Barnstable by the terms of which the petitioner was employed as principal of the Barnstable High School which employment was continued until by the provisions of G. L. c. 71, § 41, his employment as principal of the Barnstable High School was at discretion, and this contract was merged by agreement in a contract for his employment as supervising principal of the junior and senior high school at a salary of $3,600 per year, which contract is now in force, and the petitioner is now entitled to be recognized and paid accordingly."

The petition was ordered dismissed, and the petitioner alleged exceptions.

The case was submitted on briefs.

*J. D. W. Bodfish & J. T. Batchelder,* for the petitioner.

*A. E. Seagrave,* for the respondents.

WAIT, J. This case is before us upon the petitioner's exceptions to findings and rulings made in denying his petition for a writ of mandamus to compel the school committee of Barnstable to recognize and to admit him to all the "powers, duties, rights, privileges, compensation and emoluments of his position . . . in the public school system of" the town of Barnstable, which he asserts to be that of principal of the high school and of supervising principal of the high school and the junior high school in that system.

It was heard by a justice of this court upon an auditor's report. He found the findings of fact made by the auditor to be true; and that the respondents did not enter into a conspiracy; that in what they did they were not acting from ill will or malice but in all respects acted in good faith with a desire to do what in their honest judgment was for the best of the schools of their town; that they did not by their vote taking from him the duties of principal of the high school and of supervising principal of the high and junior high schools remove him from office as a teacher nor intend to remove him therefrom, nor intend any other purpose thereby; that they did not mean by that vote to evade the law or statutes of the Commonwealth, and were not controlled by ill will or a feeling of personal hostility to the petitioner. He ruled that they had authority to do what they did, and, by a

majority vote, to change the duties of the petitioner.   He denied all of the thirty-three requests for rulings and findings made by the petitioner which were inconsistent with the above rulings and findings; and he ordered the petition to be dismissed.

It is not necessary to set out the evidence in detail.   No good exception lies to the findings if there was evidence which would justify them.   We have examined it and are satisfied that an unprejudiced mind could justly reach the conclusion announced.   The controlling facts are that, after many years of faithful service as a teacher and principal of the high school, the petitioner, on April 4, 1929, was elected by the then school committee to be supervising principal of the high and junior high schools at an annual salary of $3,600.   He performed the duties so imposed for the school year of 1929–1930.   In the spring of 1930 the membership of the committee was increased from three to five; and, on September 18, 1930, the enlarged committee voted, three votes to two, to change the duties of the petitioner from those of supervising principal to those of a teacher in the high school of such subjects as the superintendent might recommend.   No change in salary was made.   The petitioner refused to consider the action to be legal, and has not performed the teaching duties, while holding himself ready to perform — and performing so far as he was permitted — the duties of a supervising principal.   On October 30, 1930, one Lowe was elected supervising principal and order was made that the petitioner be supplied with a teacher's desk at some place outside the principal's office.   Two of the five members of the committee voted against this action, and protested it as illegal.   No formal notice of intent to change the petitioner's duties from supervising principal to teacher in the high school without supervising powers was given the petitioner before the meeting of September 18, 1930.   The essential matter for decision is whether under G. L. c. 71, § 42, as amended by St. 1921, c. 293, a majority vote or a two-thirds vote of the school committee is required where the duties of a teacher on tenure at discretion are changed from those of a principal or supervising principal to those

merely of giving instruction as a teacher.   The actions here challenged were taken by a majority.

The only provisions of our statutes which limit the authority of school committees to discharge teachers, to reduce their salaries or to change the duties assigned to them are contained in G. L. c. 71, §§ 39–44, both inclusive, as amended by St. 1921, c. 293, and c. 420, § 4.   No question of reduction of salary is involved here.   No provision with regard to change of duties exists, unless it be involved in the provisions with reference to dismissal.   For the purposes of the retirement fund for the benefit of teachers in the public schools, G. L. c. 32, § 6, as amended by St. 1925, c. 228, § 1, a "Teacher" is defined as "any person employed by one or more school committees . . . on a full time basis as a teacher, principal, supervisor or superintendent in the public day schools in the commonwealth . . . ."   This is the only definition of teacher made by our statutes so far as has been brought to our attention.   G. L. c. 71, § 42, as amended by St. 1921, c. 293, provides that school committees "may dismiss any teacher, but in every town except Boston no teacher or superintendent, other than a union or district superintendent, shall be dismissed unless by a two thirds vote of the whole committee.   In every such town a teacher or superintendent employed at discretion under the preceding section shall not be dismissed unless at least thirty days prior to the meeting, exclusive of customary vacation periods, at which the vote is to be taken, he shall have been notified of such intended vote, nor unless, if he so requests, he shall have been given a statement by the committee of the reasons for which his dismissal is proposed; nor unless, if he so requests, he has been given a hearing before the school committee, at which he may be accompanied by a witness; nor unless, in the case of a teacher, the superintendent shall have given the committee his recommendations thereon.   Neither this nor the preceding section shall affect the right of a committee to suspend a teacher or superintendent for unbecoming conduct, or to dismiss a teacher whenever an actual decrease in the number of pupils in the schools of the town renders such action advisable.   No teacher or superintendent

who has been lawfully dismissed shall receive compensation for services rendered thereafter, or for any period of lawful suspension followed by dismissal." This language makes manifest that the dismissal contemplated is a complete separation from the schools of the town; and is not a mere change in assignment of duties resulting in lessened authority or scope of employment. No limitation is placed by this statute on the power of a majority of the school committee to change or to lessen the duty assigned to a teacher. Although G. L. c. 71, § 4, requires towns of a certain size to maintain high schools to be "kept by a principal and such assistants as may be needed" and § 5, in providing for reimbursement of expense by the Commonwealth, speaks of payment "for a principal and for each teacher," we do not interpret the law as creating a class of principals as distinct from teachers. Principals are teachers who are entrusted by the school committee with special duties of direction or management, which may be changed or taken away as the school committee by a majority vote decides.

The ruling requested based on an assertion of rights by contract could properly be denied in the circumstances.

Nothing in the cases of *Sweeney* v. *School Committee of Revere* and *Pollard* v. *Same*, 249 Mass. 525, relied on by the petitioner, requires a decision in his favor. In the case of Pollard the decision turned on lack of good faith in the votes taken, while here it is found that the respondents were acting in good faith. The decision with reference to Sweeney is in accord with what has been stated. It recognizes the power of the school committee to change the duties of a teacher who has been a principal while retaining him in the school department.

We have considered all the matters argued but find further discussion of collateral questions immaterial to the decision that no error appears.

*Exceptions overruled.*