NELSON C. TAINTOR ET ALS. *vs.* CITY OF HARTFORD ET ALS.

MALTBIE, C. J., HINMAN, AVERY, BROWN and McEVOY, Js.

Argued October 8th—decided December 21st, 1937.

*Ralph O. Wells* and *William S. Locke*, for the appellants (plaintiffs).

*Francis W. Cole*, with whom were *Barclay Robinson, James M. Carlisle* and *Harold Borden*, Assistant Corporation Counsel, for the appellees (defendants).

MALTBIE, C. J. This is an action brought by the plaintiffs as citizens and taxpayers of the city of Hartford seeking to enjoin the officers of the city from paying a salary to the defendant Fox, whom we shall hereafter refer to as the defendant unless we otherwise indicate, as vice-principal of one of its elementary schools, the Arsenal School. The defendant was superintendent of the Washington School District and principal of the Washington Street School in Hartford from 1917 to 1932 but ceased to hold these positions on July 15th, 1932, and had no official connection with any public school in the State thereafter until December 9th, 1935. On that day the Hartford board of education appointed him acting principal of the Brackett

Elementary School at a basic salary of $6000, his services to commence December 16th, 1935. However, on December 14th, 1935, the board voted that the defendant's duties and salary should "be deferred until other arrangements can be made at a later meeting of the Board," and the defendant at no time acted as principal of the Brackett School. On June 10th, 1936, the board of education passed a vote that the defendant should be assigned as vice-principal of the Arsenal School. At that time the statutes provided that no new teacher, principal, superintendent, supervising agent or school superintendent should be employed in any school of the State or entitled to receive any salary unless he possessed an appropriate state certificate, but with a concluding clause providing that all certificates which had been issued under any act of the General Assembly and were in force on July 1st, 1935, should be valid and might be renewed upon the same conditions and by the same authority under which they were originally issued. The defendant on June 10th, 1936, held a teacher's certificate which had been issued to him by the Hartford board of education on September 1st, 1925, when he was superintendent of the Washington School District and principal of the Washington Street School in that district, and this certificate was in terms a permanent certificate for qualification as a teacher in the district schools of Hartford. He also held a certificate entitled a "permanent supervision certificate" issued to him on July 31st, 1931, by the state board of education, authorizing him to act as superintendent of schools, supervising agent or assistant superintendent of schools in any town or district of the State. The question determinative of this appeal by the plaintiffs from the decision of the trial court for the defendants is whether either or both of

these certificates qualified the defendant Fox to hold the position of vice-principal of the Arsenal School.

In 1918 and for a considerable time before, there had been in effect statutes which forbade the employment in any school receiving any support from public money of a teacher who did not hold a certificate issued by the school visitors, town school committee or board of education of the town; it was required that the school authorities named should examine any teacher and if they found him qualified to teach certain specified subjects forming the usual curriculum of an elementary school and were satisfied with his moral character and ability, a certificate was to be issued which, unless limited to a specified time or school, authorized the teacher to teach in any public school in the town or district; and there was a further provision that the state board of education might, after examination, give a certificate of qualification to teach in any public school of the State, which must be accepted by the school visitors, town school committee or board of education of any town in lieu of any other examination. General Statutes, Rev. of 1918, §§ 1007 to 1009. It was also provided that the committee or board of a town maintaining a high school should examine all candidates for a position as teacher in that school and give to those of satisfactory moral character, literary attainments and ability to teach, a certificate stating the subjects that they were found capable of teaching. General Statutes, Rev. of 1918, § 993. The statutes in 1918 also authorized the appointment of a superintendent of schools in any town or in a supervising district which two or more towns might form, and it was required that a superintendent appointed in a supervising district or in a town employing more than twenty and not more than thirty teachers should hold a certificate of approval by the state board of educa-

tion; but there was no requirement of approval of superintendents in towns employing twenty or less, or more than thirty teachers; and there was a further provision that upon petition by the school authorities of a town employing more than twenty teachers the state board of education might appoint an agent who was to discharge the duties of superintendent, and again there was no requirement that a person so appointed should hold a certificate of qualification. General Statutes, Rev. of 1918, §§ 893 to 900.

In 1921 authority to grant certificates to teach in the towns was vested in a board of examiners of which the superintendent or supervising agent, if there was one, was a member, but it was provided that certificates theretofore issued under the provisions of the General Statutes in force when the act went into effect should be valid and might be renewed upon the same conditions and by the same authority under which they were originally issued. Public Acts, 1921, Chap. 226. By another act passed at the same session of the Legislature the state board of education was given authority to grant certificates to teach or supervise in any public school of the State, which the local school authorities were obliged to accept in lieu of any other certificate, except as regards additional qualifications they might require, and this act contained the same concluding clause as was in Chapter 226 of the acts of that year. Public Acts, 1921, Chap. 238. While the latter act authorized the state board of education to issue certificates, it did not change the law as regards those who were required to have them.

In 1931 there was a general revision of the school laws. In that revision it was provided that no "teacher, principal, supervisor, supervising agent or school superintendent" should be employed in any of the schools of any town or should be entitled to receive a salary

unless he should possess an "appropriate town or state certificate;" and the statute contained a concluding clause validating certificates theretofore issued similar to that in the act of 1921 except that the date when such certificates must be in force was changed to July 1st, 1931. General Statutes, Cum. Sup. 1931, § 119a. In this revision of the school laws no authority was given to local school officials to issue certificates, but the state board of education was authorized, in accordance with such rules and regulations as it might prescribe, to grant certificates of qualification to teach or supervise in any public school of the State, and local boards of education were required to accept these certificates in lieu of any other certificates, except that they might require additional qualifications. General Statutes, Cum. Sup. 1931, § 120a. In 1933, § 119a was amended by inserting the word "new," so that the statute read that "no new teacher, principal, supervisor, supervising agent or school superintendent" should be employed in any of the schools of any town or receive a salary unless he possessed a certificate; and the word "town" was stricken out of the phrase concerning "appropriate" certificates, so that it read "an appropriate state certificate;" and this amendment contained a concluding clause similar to that in the acts of 1921 and in § 119a, but with a change of date to 1933. General Statutes, Cum. Sup. 1933, § 206b. This section of the statute was further amended in 1935 in a respect not material to the question before us, and the concluding clause was re-enacted with a change of date to July 1st, 1935. General Statutes, Cum. Sup. 1935, § 236c.

Previous to the revision of the laws in 1931 the only certificates which could have been issued "by or under any act of the General Assembly" were the certificates of the local school authorities authorizing the holder

"to teach," the certificates of qualification of the state board of education which the local authorities were required to accept, and certificates showing that certain superintendents had been approved by the state board of education. The defendant, when the 1931 act went into effect, did not have a certificate of the latter type; and we may assume that he was not required to have one as superintendent of the Washington School District; for while the finding does not state that there were employed in the city previous to 1931 more than thirty teachers, it does show that at the time the action was tried there were almost a thousand teachers employed by the city. He did have a teacher's certificate which was unlimited in duration and has never been revoked. It was within the terms of the concluding clause of the Public Act of 1921 and of § 119a of the Cumulative Supplement of 1931, and the amendments to that section which made valid certificates issued under any previous statute and in force on the day specified. When the defendant was appointed vice-principal of the Arsenal School his teacher's certificate was in full force and effect.

This conclusion requires a consideration of the intent of the Legislature expressed in the provision of § 119a of the Cumulative Supplement of 1931 as subsequently amended, that "no teacher, principal, supervisor, supervising agent or school superintendent" should be employed in any public school unless he possessed an "appropriate" certificate. This provision is to be read with § 120a of the same supplement, which authorized the state board of education "in accordance with such rules and regulations" as it might prescribe, to issue "certificates of qualification to teach or to supervise" in the schools and with the amendment first made in 1933 and repeated in 1935, which inserted the modifying word "new" before the words "teacher,

principal, supervisor, supervising agent or school superintendent." The 1931 law evidently contemplated that the state board of education would by its rules and regulations establish different qualifications for the several positions enumerated, as it has in fact to a considerable extent done. We agree with the Supreme Judicial Court of Massachusetts that, as applied to the matter we are discussing, "principals are teachers who are entrusted by the school committee with special duties of direction or management." *Boody* v. *School Committee of Barnstable,* 276 Mass. 134, 138, 177 N. E. 78. As indicated in this definition and as matter of common knowledge, a school principal has very important duties other than those which pertain immediately to the giving of instruction. A certificate of qualification to teach, if the positions of teacher and principal are considered apart, is not an "appropriate" certificate for a principal. As vice-principal the defendant supervises the teachers in the school in a way which pertains to the office of school principal and not to that of one who is a mere teacher although he does some teaching; and that his position falls within the class of principals is apparent from the salary voted him. His certificate to teach would not be an appropriate certificate as regards his position as vice-principal.

The purpose of the concluding clause of § 119a of the 1931 law and of the amendments to that section was undoubtedly to free those who had certificates issued under the old law from the necessity of getting certificates under the provision of the new statute. But that statute took no note of the fact that there were certain superintendents and supervising agents who, before it was enacted, were not required to have, and probably did not have, any certificates and under its terms they could not continue in their employment

without securing a certificate issued under its provisions; and there were very likely principals of schools who had certificates merely qualifying them to teach, not "appropriate" to the positions they held, and a strict interpretation of the 1931 law might result in their disqualification for positions as principals. The purpose of the amendment of 1933, followed by that of 1935, which added the modifying word "new" to the positions enumerated in the statute, was apparently to restrict the law in such a way as not to require a certificate under its terms to be procurred by anyone who occupied one of those positions, whether he held no certificate or a certificate issued under the old law not "appropriate" for it, so long as he continued in that employment. Whether one who was thus relieved from securing a certificate under its provisions could be employed in an immediately succeeding but different position from that he held when it went into effect, we have no need to determine.

A "new" teacher, principal, supervisor, supervising agent, or school superintendent, if he held a certificate properly issued before the statute went into effect which was "appropriate" to a position for which he might thereafter be employed, would be within the protection of the concluding clause of the statute. But to hold that, no matter what type of a certificate a "new" school employee might have, he would be relieved from the requirement of the statute that he must hold an "appropriate" certificate, would be to give to the law an interpretation which its terms do not justify. The concluding clause is that certificates issued under any previous act of the General Assembly "shall be valid and shall be renewed upon the same conditions and by the same authority under which they were originally issued." If the Legislature had intended that a certificate in force when the amend-

ment went into effect, no matter what its type, should be deemed an "appropriate" certificate for any of the positions enumerated in the statute, it certainly would have more clearly indicated that it was making such a broad exemption from the provisions of the law. If the provision that no "new" teacher, principal, supervisor, supervising agent, or school superintendent should be employed unless he held an "appropriate" certificate is read in immediate juxtaposition with the concluding clause that certificates issued under the old law should continue to be "valid," it will be seen that the interpretation we place upon the statute gives effect to the fair purport of its language; that is, that a certificate issued under the old law would continue to be valid even as regards a "new" school employee so far as it was "appropriate" for the position in which he was employed, but that it would not qualify him to hold a position for which it was not an "appropriate" certificate. If the defendant is to be regarded as a "new" principal, it follows that the teacher's certificate issued to him in 1925 would not qualify him for the position to which he was appointed in 1935.

It is to be remembered that the defendant had ceased to hold office in the Washington School District on July 15th, 1932, and thereafter held no position in any public school until his appointment as principal of the Brackett School on December 9th, 1935, a period of more than three years. If the use of the word "new" had reference only to one who was for the first time embarking upon the particular type of work for which he was applying, and the requirement of an appropriate certificate was not intended to apply to one who previously had had employment as a superintendent, principal or teacher, it is obvious that the law would permit the employment of persons whom the Legisla-

ture could hardly have intended to except from its provisions. Thus one who had retired from a position of school superintendent, for instance, at a time when there was no requirement of a certificate of qualification for that office and who had given up all educational work for years would be eligible to appointment without any requirement of a certificate; and, to cite a more extreme case, so would one who had been a teacher, superintendent or supervising agent and had been removed for cause. On the other hand, we can reasonably assume that the intention of the Legislature was to permit those who at the time of the passage of the 1933 law held one of the enumerated positions to continue at least in that employment without the necessity of complying with its requirements. To avoid the result the Legislature could not have intended, and reasonably to accomplish its purpose, we must interpret the provision that a "new" teacher, principal, supervisor, supervising agent, or school superintendent should have an "appropriate" certificate, as including one who has for a substantial period of time definitely severed his connection with the schools and then seeks re-employment in them in one of the enumerated positions; and we must construe the concluding clause as not making "valid" a certificate issued to such an one under a former law unless it is "appropriate" to the position in which he is to be employed. Under the interpretation we place on the law the defendant was a "new" teacher or principal when he was appointed vice-principal of the Arsenal School and as he did not have a certificate "appropriate" to that position he was not eligible to it.

In a letter written after the 1933 act went into effect, to the principal of another elementary school in Hartford who held a like certificate to that of the defendant, the director of the bureau of teacher prepara-

tion in the state department of education said that the principal's "present local certificate will cover you for whatever supervisory assignment may be given you by the city administration." In the absence of the inquiry to which this statement was an answer we cannot determine the scope it was intended to have. It apparently referred to a continuance of the principal's employment in the schools of Hartford. At any rate it was called to the attention of the commissioner of education, the director's superior, and to the state board of education itself in connection with their consideration of the right of the defendant to be employed in his present position and as applied to him was not approved. We cannot attach weight to this statement as indicative of a construction of the laws by the state board of education at variance with that we place upon them.

The certificate issued to him by the state board of education requires little comment. The statute of 1931 contemplated, as we have said, that the positions of teacher, principal, supervisor, supervising agent and school superintendent might be treated upon a different basis as regards qualifications under regulations to be established by the state board of education. The board did, before the defendant's appointment, adopt regulations establishing different qualifications for certificates to be issued to teachers, principals and superintendents, including in the latter class supervisors, and these regulations were in effect when he was appointed. A certificate as principal in an elementary school could only issue to one who had had a certain amount of experience as a teacher in an elementary school; but there was no such requirement as regards a certificate issued to one as superintendent, and one might receive such a certificate who had never taught in an elementary school at all. The correspondence with

reference to the certificate issued to the defendant by the state board of education in 1931, the vote of the board and the certificate itself show unmistakably that it was issued to him in his capacity of superintendent of the Washington School District, not in that of principal of the Washington Street School. The plaintiffs contend that under a regulation of the board adopted in 1934, the fact that the defendant had for more than three years ceased all connection with the public schools of the State automatically revoked the certificate. Whether that is so or not is of no consequence in the situation before us, for even if the certificate were still in force it would not qualify the defendant for the position of vice-principal to which he was appointed.

Nor do we need to consider the further contention of the plaintiffs that the defendant's appointment was invalid because made by a bare majority of the board of education, one member of which was his wife, who voted in favor of it.

There is error; the judgment is set aside and the case remanded with direction to enter judgment for an appropriate injunction as prayed for in the complaint, in accordance with this opinion.

In this opinion HINMAN, AVERY and BROWN, Js., concurred.

McEVOY, J. (dissenting). In this opinion Dr. Fox is referred to either as the defendant or, without intended disparagement, as Fox—not only for convenience but also because he appears, upon the record, to be the real defendant.

A brief review of his scholastic history shows that for nine consecutive years he was a teacher and that, for fifteen consecutive additional years, he also acted as principal and superintendent of public schools in the

State of Connecticut. In the summer of 1931 the commissioner of education of Connecticut wrote to each member of the state board of education that "there are twenty-eight superintendents who were . . . continued under the local . . . or old type state certificates which they then held" and that "all of them could qualify under . . . present regulations" and that "it would be a gracious and appreciative act if, without petition or other formality, we give to these the certificates needed." Following this suggestion and its vote the state board ·of education issued to Dr. Fox a standard state supervisor's certificate which was designated as "a license to act as superintendent of schools, a supervising agent or assistant superintendent of schools, in any town or district in this state." This certificate was signed by the chairman of the state board of education and by the state commissioner of education. The issuance of this certificate was a voluntary act by the state board of education and entirely unsolicited by the defendant.

With the certificate a letter, dated July 31st, 1931, was enclosed which read, in part, as follows: "You have rendered to education of the state long and appreciated service and, under a certificate of an earlier form, have for years held the position of superintendent of schools in your district. As a recognition of your work the state board of education has been pleased to order the omission of all of the usual preliminaries and to issue to you a permanent supervisory certificate. It is to me a personal pleasure to announce this action and to send to you a document which I hope you will prize and long use." It is important to observe the wish expressed in that letter that Dr. Fox would "long use" the certificate enclosed.

In June, 1932, a new district committee was elected by the voters of the Washington School District and

the new committee failed to re-employ the defendant. From 1933 to 1936 the defendant was deputy chief probation officer of the juvenile court of the city of Hartford and was also connected with the Hartford Secretarial School, Inc., a business school which the defendant controlled and in which he taught mathematics. Between July 15th, 1932, and December 9th, 1935, Fox had no official connection with any public school.

At a meeting of the state board of education held on February 7th, 1934, the board adopted a vote in which it was provided substantially that "any certificate may be revoked for incompetence, immorality, or unprofessional conduct." No claim appears in the record that at the time the defendant lacked any of the qualifications essential to the issuance of the state certificate. At no time has the certificate issued to the defendant been revoked for incompetency, immorality, or unprofessional conduct.

On December 6th, 1935, the Hartford board of education appointed the defendant acting principal of the Brackett Elementary School, his term to begin December 16th, 1935, and to continue *at the pleasure of the board*. On December 14th, 1935, this appointment was deferred "until other arrangements can be made at a later meeting of the board." On January 8th, 1936, the state board of education adopted a vote "that Michael G. Fox did not possess an appropriate certificate for service as principal of an elementary school." This "vote" was apparently adopted as a sequence to prior anomalous proceedings, in that, on December 27th, 1935, a letter was written to Fox as follows: "Dear Mr. Fox: After a careful review of the request of your letter of December 14, 1935, I am obliged to rule that your certificate is not a valid certificate for the position to which you have been ap-

pointed. If you desire to appeal from this decision to the state board of education please inform me. There will be a meeting of the board at its office in Hartford on Wednesday, January 8, 1936, at 11:00 A.M. If you wish to appeal I suggest that you present your case in written form in order that it may have by members of the board complete consideration. Very truly yours, E. W. Butterfield, Commissioner of Education."

In that letter the commissioner of education wrote "I am obliged to rule . . ." It thus appears that the original "ruling" as to the "validity" of the certificate of Fox was made by the commissioner of education— and not by the state board of education. The announcement of the "ruling" by the commissioner of education was followed by the invitation of the commissioner of education to Fox to "appeal" to the state board of education.

In case No. 46912, Kent E. Stoddard vs. Board of Milk Control, which was decided in the Superior Court in Hartford on June 21st, 1934, the trial court said: "It appears that the board set up a certain standard of operation and of consideration of complaints made against those subject to its rulings, and its general plan and scope of operation seem to have been that upon receipt of those complaints, upon the detection of infraction of the rules, that it would call in the one so charged, or complained against, and not only hear that person, firm or corporation, whichever it might have been, but also to issue a warning as to the consequence of the continuance of such conduct." The case was decided in favor of the plaintiff upon the ground that, in revoking the license of the plaintiff, the defendant commission had not complied with its own standards of procedure. So, in this case, it would seem reasonable to have expected that the state board of education would have had a definite standard of pro-

cedure; that the defendant—and all others—would be entitled to a hearing in accordance with that standard of procedure and that neither statutory nor common-law privileges or rights would be altered or prejudicially affected by the state board of education except in consequence of and after a fair original hearing so held. As part of that procedure it would seem reasonable to have expected that, when any such action was in contemplation by the state board of education, the defendant would have been duly apprised of the reason and basis for the proposed action and, equally important, of the date, place and hour of the proposed hearing.

It may be that, under the existing statutes, the commissioner of education is authorized to make "ex parte" rulings which would alter the status of the defendant. This authority does not appear upon the record. After the making of the alleged "ruling" by the commissioner of education the defendant then was, for the first time, notified of the "ruling," having had no notice of the proposal to make the ruling. The defendant was then invited by the commissioner of education who had made the "ruling," if he so desired, to "appeal" from the "ruling" of the commissioner of education to the state board of education. Upon the record it does not appear that there was any legal provision for such "appeal." Whether, in view of the apparently close connection of the commissioner of education and the state board of education the alleged "appeal" would have been merely a confirming action by the state board of education is not, on the record at least, determinable. No right of appeal from the action of the state board of education in reference to such "rulings" appears to have been definitely provided by law. In the absence of any provision for appeal, the method of procedure in reference to either cancellation or

revocation should be definitely prescribed and, equally important, definitely and regularly followed.

Thereafter on June 10th, 1936, Fox was duly appointed vice-principal of the Arsenal School and he began his employment on June 11th, 1936. In the following September, 1936, Fox resumed his duties as vice-principal of the Arsenal School with the approval of the Hartford board of education and without objection from any member of the board. Since June 11th, 1936, Fox has been actively engaged in the performance of his duty as vice-principal of the Arsenal School and has been paid the salary provided for in the vote of the Hartford board of education. On September 2d, 1936, the state board of education notified the Hartford board of education that it appeared that the state board of education would have no authority to certify Hartford for participation in the enumeration grant which would be paid to the towns in March, 1937, and that the continued employment of Fox in the present school year would jeopardize the payment of the enumeration grant to Hartford in March, 1936.

In the fall of 1936 there were forty-six teachers having local certificates similar in form to the local certificate held by Fox and these forty-six teachers had no state certificates. At the same time there were two principals of public schools in Hartford who had local certificates similar to the local certificate of the defendant but who had no state certificates. One of these principals was Thomas F. O'Loughlin, principal of the Chauncey Harris School, and the other was George W. Young, principal of the Northwest Elementary School. On May 25th, 1934, the director of the bureau of teacher preparation of the state board of education wrote to Mr. O'Loughlin informing him that his "Permanent local certificate will cover you for whatever supervisory [employment] may be given you by

the city administration." The permanent local certificate held by Mr. O'Loughlin was identical in form with that held by the defendant. In the State of Connecticut there are four hundred to five hundred teachers in the public schools who have local teachers' certificates and no state certificates.

The state board of education has never taken affirmative action to revoke the state permanent supervisor's certificate held by the defendant so that it is now, upon the record at least, an outstanding unrevoked state certificate. It should be observed that the "permanent" supervisor's certificate, with the accompanying letter, was issued to the defendant by the state board of education on July 31st, 1931. On January 8th, 1936, nearly five years after the issuance of the "permanent" certificate, the state board of education adopted the "vote" that Fox "did not possess an appropriate certificate for service as principal of an elementary school." This was, of course, at best a conclusion. No subordinate facts were stated, much less was any reason given by the state board of education for the general conclusion expressed in the vote.

The same procedure was followed in imparting the news of this "vote" to the Hartford board of education. On March 9th, 1936, Fox was informed *for the first time* by the state board of education that he had "severed his connection with the schools of Hartford July 19th, 1932, and can return to them only as a new teacher." This must be considered in connection with the then existing "permanent" certificate previously issued to the defendant by the same board.

It may be said that the interpretation of the word "new" must be made in the broad sense of a continuance of employment in such a position as he then occupied under one or more contracts. *Emerick* v. *Connecticut General Life Ins. Co.*, 120 Conn. 60, 65, 179

Atl. 335. At that page this court cited *Perkins* v. *Eagle Lock Co.*, 118 Conn. 658, 174 Atl. 77, where we said: "Action was brought upon a certificate of benefit issued by a corporation to its employee, under which a certain payment was to become due to the latter's wife upon his death while 'in the employ' of the corporation." We sustained judgment for the plaintiff although the employee had not been engaged in working for the corporation for more than two years and there was an entry upon its record, made by the corporation four months after he ceased work, that he was "through." We said (p. 663): "It is clear that neither party to this certificate intended such an automatic termination of the relations of employee and employer, but that the word was intended to indicate the status of the holder of the certificate in relation to the company. The word as here used is intended to indicate a continuous right to the stated benefit until the contract relation is terminated by the withdrawal of the employee or discharge by the employer with notice to the other party."

The last six words "with notice to the other party" are important in the determination of the present case. The record shows that the defendant and other superintendents and principals were employed by the Hartford board of education at "the pleasure of the board." It was thus envisioned that although the employment might be terminated at any time at the pleasure of the appointing power—the Hartford board—yet this would have no effect upon the permanency of his state certificate. It is also important to bear in mind that the defendant did not terminate his employment with the board of education or the district committee of Hartford of his own volition, nor that it was ever terminated, but that he was simply not re-engaged. In the interim, before he was again engaged, he devoted his

time to the same sort of engagement, teaching and doing probation work. He did not, in the interim, become antiquated or incapacitated or out of touch with the employment in which he had so recently been engaged.

In the majority opinion the various amendments to the school laws which were adopted by the Legislature are reviewed. It is important to observe that each one of the various amendments contained the qualifying clause that all certificates heretofore issued shall be valid and shall be renewed on the same condition and by the same authority by which they were originally issued.

This requires consideration of two elements in the qualifying and validating clause. In the first place, it is provided that the certificates shall be valid. In the second place, it is provided that they shall be renewed. This is not equivalent to saying that they may be renewed or might be renewed. The direction is mandatory, "shall" be renewed. Under these circumstances the defendant occupied a status which, upon the record, was attempted to be altered in the first place by the commissioner of education without notification to him and in the second place without any opportunity afforded to him either to have his certificate declared valid or, if necessary, to have it renewed.

This court has definitely passed upon the question of the right of one in a position similar to that of Fox to a hearing. "It is quite true that the issuance of the certificate confers upon its possessor a special privilege whose value cannot be measured in money alone, and of which he cannot justly be deprived without due notice and full opportunity to be heard." *Brein* v. *Connecticut Eclectic Examining Board* (1925) 103 Conn. 65, 83, 130 Atl. 289, 294. In that case the cer-

tificate was revoked by the duly authorized board for fraud under a statute which specifically authorized such revocation. General Statutes, 1918, § 2859 (since repealed).

It is a privilege to be admitted to practice as an attorney at law in this State. It is likewise a privilege to be admitted to teach or to act as vice-principal or superintendent in this State. Neither of these professions or employments, however they may be termed, may be indulged in as a matter of right but only as a matter of privilege upon proper preparation and then proper admission. "The inalienable right of every American citizen to follow any of the common industrial occupations of life does not extend to the pursuit of professions or vocations of such a nature as to require peculiar skill or supervision for the public welfare. . . . But one who asks the privilege of admission to the bar is simply seeking to obtain a right of property which he has not got." "To disbar an attorney is to deprive him of what, within the meaning of our constitutions of government, may fairly be regarded as property." *O'Brien's Petition,* 79 Conn. 46, 55, 63 Atl. 777.

Subsequent reference will be made to the lack of any, much less "due" notice, and any opportunity on the part of the defendant to be heard in reference to the sufficiency, validity or availability of the alleged permanent certificate previously issued to him by the state board of education.

The apparent difference between the status of Fox and Messrs. O'Loughlin and Young, principals of two other schools, is that Fox for a time was not employed by the city of Hartford, while the other two principals were continuously employed. This required the decision to be based entirely upon the construction and application of the word "new."

An examination of the pre-existing laws throws very little light upon the intention of the Legislature. It does, however, appear in § 897 of the Revision of 1930, in the last sentence, that: "No person shall be eligible for appointment under the provisions of this section who does not hold a certificate of approval by the state board of education or who has not had at least five years successful experience as a teacher or superintendent." This has to do with the section entitled "Superintendent for more than one town." It would appear that the qualification of fitness, as a teacher, was of equal importance with the holding of a certificate of approval issued by the state board of education because this intent is, evidently, plainly indicated by the alternative construction of the section of the statutes just cited since it contains the alternative word "or" so as to make it possible for the person eligible for the appointment to rest upon five years' successful experience as a teacher or superintendent in lieu of the certificate of approval by the state board of education.

It is a matter of common knowledge that the regulations governing the admission and practice of lawyers in the State of Connecticut are strict, probably at least as strict as the rules governing the admission and employment of teachers. Upon argument and upon the record it was conceded that a lawyer may be admitted; may practice for one, three, five or any number of years; may voluntarily retire from practice for any number of years and, thereafter, at any time during the remainder of his life, be it ever so many years, he may again appear in the highest court of the State and represent any client without challenge or question as to his right so to do. It would seem reasonable to construe the intention of the Legislature to be that one having such certificate as that of the defendant might

be justified in relying upon the continuance of the validity of that certificate until, for some reason within the legislative enactment, and not unexpressed, the certificate be properly cancelled or revoked. It is an accepted principle that a condition once existing may, under ordinary circumstances, be presumed to continue to exist until the contrary be shown. *Van Guilder* v. *Van Guilder*, 100 Conn. 142; *Mills* v. *Strong*, 68 Conn. 273, 290, 36 Atl. 55; *Weidlich* v. *New York, N. H. & H. R. Co.*, 93 Conn. 438, 442, 106 Atl. 323; *Johnson* v. *Palomba*, 114 Conn. 108, 114, 157 Atl. 902.

The claim is also made on behalf of the plaintiffs, both in brief and in argument in this court, that the certificate issued to the defendant by the state board of education was not a certificate which would authorize him or permit him to act in the position to which he was appointed by the Hartford board of education, that is, as vice-principal. In this connection two observations should be made. The first is that the certificate recites that it is "a license to act as superintendent of schools, supervising agent, or assistant superintendent of schools, in any town or district in this state." The second observation is that the Legislature, in the various amendments to the school laws, classified those affected, or to be affected, in the following order: "Teacher, principal, supervisor, supervising agent or school superintendent." We thus have five different positions in ascending order from teacher to school superintendent. If the principle be recognized that "the greater contains the less" (*Bell* v. *Towner*, 55 Conn. 364, 366, 11 Atl. 185), then it would seem that, as the Legislature by its various enactments and amendments has seen fit to establish its own order of classification, it should be so that if the certificate entitles the holder, Fox, to act as superintendent, that

this should at least enable and authorize him to act or to qualify as vice-principal.

In support of the majority opinion the claim is also advanced that the word "new" should receive the construction accorded to it for the reason that it represents the expressed intention of the Legislature to prevent unsuitable persons from being engaged as the defendant was in the public schools. The answer to this would seem to be very simple. Fox was chosen by a duly elected board at Hartford. His employment was terminated also by a duly elected board. He was again chosen by a duly elected board. It thus appears that no difficulty exists about the employment or retention of unsuitable persons, upon any interpretation of the law. They may be engaged or not at the pleasure of the board. At all times the matter is entirely in the hands of the voters of the district. The purpose of the law is to enable the voters to choose persons who are qualified to act. This they have done. This phase of the matter is political, not judicial, and lies entirely within the control of the voters. If they act within the law but, supposedly at least, against public policy, then the remedy is legislative, not judicial.

Insofar as the qualifications of Fox are concerned, either as teacher or vice-principal, there is nothing in the record which would indicate that at any time these qualifications have been questioned. It seems to be admitted and conceded that he did have all necessary qualifications to act either as teacher or as vice-principal. If the claim were made that he lacked any of these qualifications some indication of it would appear in the record. None does.

Since the state board of education is an administrative body its procedure, affecting, as it does, so many teachers and others of the State, should be specific and uniform. It should specifically provide for a hearing

to be accorded to any interested teacher or vice-principal. The same rule should apply to all. The record does not disclose a similar course of conduct toward any teacher, principal or superintendent other than Fox. It would seem simple and reasonable, if the validity of a previously issued "permanent" certificate were to be called into question, that the holder of it ought to be duly apprised of any claim respecting its invalidity; that he should not only be notified but that he should be duly accorded a hearing and that no action should be taken in the matter in the absence of such notification and hearing.

Our law, both municipal and state, is so enacted and so interpreted as to safeguard rights. Section 425 of the General Statutes provides that zoning regulations may be amended, changed or repealed after a public hearing in relation thereto of which at least fifteen days' notice shall be given by publication. On appeal we held that a notice published on July 27th, 1934, of a hearing to be held on August 10th, 1934, was not in compliance with the charter provisions. *National Transportation Co., Inc.* v. *Toquet,* 123 Conn. 469, 196 Atl. 344. In that case at least some notice was given. Here none was given. In that case the "notice" given did not comply with the law. In the instant case the entire lack of notice does not accord with justice.

The present suit is brought upon an existing state of facts and upon a conclusion arrived at by the state board of education without a hearing and in the absence of the defendant, the interested party. In fact the record shows that no specific reason for the alleged claim of invalidity or the "ruling" respecting the validity was made until after an extended correspondence. This was, at best, a nunc pro tunc "reason" as-

signed subsequent to but not preceding the conclusion itself. It would thus appear that the logical order was reversed, as the conclusion was arrived at before the reason for the conclusion was assigned. Under these circumstances the defendant has not had his day in court. Much less has he had any opportunity to be heard. The suggestion made by the commissioner of education that the defendant appeal from his "ruling" to the board of education was not accepted nor acted upon. The futility of such proceeding is made apparent by the subsequent action.

A comparison of the letter sent by the state board of education to the Hartford board of education with the fulsome gratuitous letter which accompanied the "permanent" certificate spontaneously issued to the defendant on July 31st, 1931, would incline a disinterested person to the belief that something had intervened, not strictly in accordance with the interpretation of the laws of the State of Connecticut, which prompted the letter, not to Fox, but to the employing board.

Action by an administrative body should be definite, precise, and, upon its face, within the terms of the law which it purports to apply. Otherwise inevitable confusion results. Confusion leads to uncertainty and injustice. Injustice is to be avoided as it is abhorrent. "As I am bound to give my own opinion, and my own reasons, I make no apology for dissenting from those whose opinions I so highly respect. If I am in error, it will, fortunately, be harmless. If these remarks deserve any consideration, they may induce my brethren of the bench, and of the bar, to review a decision, which I cannot but consider as subversive of a government of laws." *State* v. *Danforth*, 3 Conn. 112, 124.