NORMAN B. A'HEARNE & others *vs.* CITY OF CHELSEA.

Suffolk.   April 7, 1966. — June 10, 1966.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*School and School Committee.*

A vote by a school committee, which for many years previously had had a salary schedule for teachers differentiating between them according to their degrees from colleges or universities, that "the salary schedule pertaining to Master's and Doctorate Degrees shall apply only to those individuals who have obtained their Degrees from Colleges or Universities accredited by" certain accrediting institutions, constituted a reasonable reclassification and, since it affected equally all teachers in the class of teachers having advanced degrees from unaccredited institutions, was valid under G. L. c. 71, § 43, as "a general salary revision affecting equally all teachers [on tenure] of the same salary grade," and in an action against the city commenced after the effective date of the vote such teachers were not entitled to recover loss of salary resulting from the reclassification.

CONTRACT.   Writ in the Superior Court dated April 8, 1963.

The action was heard by *DeSaulnier, J.*

*Joseph G. Crane* for the plaintiffs.

*Alexander E. Finger,* City Solicitor, for the defendant.

SPIEGEL, J.   In this action of contract thirteen teachers in the public schools in the city of Chelsea seek to recover for loss of salary resulting from their reclassification by the school committee.   The judge of the Superior Court sitting without a jury made a finding for the defendant, and filed a "memorandum of law in connection with . . . [his] finding."   The case is here on exceptions to the "rulings and finding" of the judge.

The action was tried on a statement of agreed facts.   In 1947 the committee established salary schedules differentiating between the teachers not having a bachelor's degree, those having a bachelor's degree, and those having a master's degree.   In 1951 the committee voted to increase the salary of "those persons who possess a doctorate de-

gree.'' Six plaintiffs have doctorate degrees from unaccredited institutions. Four of these six plaintiffs hold master's degrees from accredited colleges, and two have master's degrees from unaccredited schools. The other seven plaintiffs have master's degrees from unaccredited institutions. For at least three years prior to 1962, the plaintiffs had been included in the salary schedule for their highest degrees. On May 31, 1962, the committee voted to increase the salary schedule for teachers by $500 effective January 1, 1963, and by $400 effective January 1, 1964. The committee also adopted a recommendation ''that the salary schedule pertaining to Master's and Doctorate Degrees shall apply only to those individuals who have obtained their Degrees from Colleges or Universities accredited by the New England Association of Colleges and Secondary Schools or the 5 other accrediting institutions.''

The plaintiffs contend that ''to apply the, vote of the Chelsea School Committee . . . to those already having tenure on the salary schedules applicable to Masters and Doctors was to impair the obligations of contracts and was therefore invalid and void.''

The plaintiffs' contracts, however, were subject to the power of the school committee to reduce salaries as part of a general salary revision affecting equally all teachers of the same salary grade. *Sweeney* v. *School Comm. of Revere,* 249 Mass. 525, 531. *Paquette* v. *Fall River,* 278 Mass. 172. *Downey* v. *School Comm. of Lowell,* 305 Mass. 329. *Watt* v. *Chelmsford,* 328 Mass. 430.

Thus, the basic issue is whether the reclassification of the plaintiffs is in violation of G. L. c. 71, § 43, which provides that ''[t]he salary of no teacher employed in any town . . . shall be reduced without his consent except by a general salary revision affecting equally all teachers of the same salary grade in the town.''

''Salary is only one factor in determining whether specified teachers are 'of the same salary grade.' '' *Paquette* v. *Fall River,* 278 Mass. 172, 177. Other factors include ''tenure of service'' (*Paquette* v. *Fall River, supra*) and position held (*McCartin* v. *School Comm. of Lowell,* 322 Mass.

624, 628). We note the language of G. L. c. 71, § 40, which provides that "[w]omen teachers employed in the same grades and doing the same type of work with *the same preparation and training* as men teachers shall be paid at the same rate as men teachers" (emphasis supplied). We believe that "preparation and training" are also factors in determining whether specified teachers are "of the same salary grade." The school committee, it seems to us, acted reasonably in differentiating between persons with degrees from accredited and unaccredited institutions. There was no differentiation between those having "the same preparation and training." The result of the committee's action was a "general salary revision affecting equally all teachers of the same salary grade," i.e., all persons with advanced degrees from unaccredited institutions.

Further, we are of opinion that the committee had authority to establish a new classification at an increased salary for persons with advanced degrees from accredited schools, since, in our view, such a classification bears a "rational relation to the furthering of the objects for which the board exists." *Cotter* v. *Chelsea*, 329 Mass. 314, 317. The persons remaining in the old classification would be the only ones in that salary grade, and, therefore, their salaries could be reduced because this would constitute a general salary revision affecting equally all teachers of the same salary grade.

*Exceptions overruled.*