FRANK CONTE *vs.* SCHOOL COMMITTEE OF METHUEN
& another.[1]

Essex.    November 18, 1975. — October 27, 1976.

Present: HALE, C.J., KEVILLE, & GOODMAN, JJ.

*School and School Committee,* Tenure of personnel.   *Notice.*

In an action by a former school principal seeking a determination that
he had not been notified in writing on or before April 15, 1974, that
he was not to be employed for the following year, evidence required
a finding that the plaintiff deliberately avoided delivery of the notice
from the school committee. [603-605]

BILL IN EQUITY filed in the Superior Court on May 20,
1974.

The case was heard by *Mitchell, J.*

*Gerald F. Lucey (Americo J. Fusco,* City Solicitor, with
him) for the School Committee of Methuen & another.

*Jeffrey M. Freedman* for the plaintiff.

KEVILLE, J.    Frank Conte, the principal of an elemen-
tary school in the town of Methuen, brought this bill of

---

[1] The superintendent of schools.

complaint for a declaratory judgment in the Superior Court seeking a determination that he had not been notified in writing on or before April 15, 1974, that he was not to be employed for the following school year (1974-1975) and, therefore, that he be deemed to have been appointed for that year and, that by virtue of his having previously been appointed for three consecutive years he now serves at the discretion[2] of the school committee (committee), that is, that he now has tenure. The governing statute is set out in the margin.[3] The defendants have appealed from a judgment entered for Conte.

The case was tried after July 1, 1974. The appeal comes here with a transcript of the evidence and the judge's findings and rulings. We are to give due weight to his findings which will not be reversed unless clearly erroneous, but we may find facts in addition to those found by him. *Taylor* v. *Lassell, ante,* 539, 540 (1976), and cases cited.

When the present controversy arose, it was the practice in the town for the superintendent of schools (superintendent) to submit to the committee a list of those teachers whose reappointment the superintendent was recommending for the ensuing year. The committee customarily appointed only those teachers so recommended. It was understood that nontenured teachers whose names were not on the superintendent's list were not to be reappointed. Were Conte to be reappointed for the ensuing school year as of April, 1974, he would thereby acquire tenure as a teacher for he was then serving his third consecutive year

---

[2] "[A]t discretion" means with "permanent," as contrasted with probationary, tenure. *Bonar* v. *Boston,* 369 Mass. 579, 581 (1976).

[3] General Laws c. 71, § 41, as amended through St. 1973, c. 847, § 6: "Every school committee, in electing a teacher who has served in its public schools for the three previous consecutive school years, shall employ him to serve at its discretion except as provided in section thirty-eight G; but any school committee may elect a teacher who has served in its schools for not less than one school year to serve at such discretion. *A teacher not serving at discretion shall be notified in writing on or before April fifteenth whenever such person is not to be employed for the following school year. Unless said notice is given as herein provided, a teacher not serving at discretion shall be deemed to be appointed for the following school year*" (emphasis supplied).

as principal.[4] In March of that year the superintendent had discussed with him a negative evaluation report which he had received and had informed him orally on more than one occasion that he was not going to recommend his reappointment. On April second, the superintendent notified Conte by letter of that decision.[5] On April sixth, Conte met with a member of the committee for an hour and discussed a possible reevaluation. On April eighth, he again met with the superintendent and discussed the possibility of reevaluation. That afternoon he saw his doctor because of an injury sustained at school three days earlier.

At the April eighth meeting of the committee, which was attended by Conte's wife, those teachers whose names appeared on a list previously submitted to the committee by the superintendent were reappointed by unanimous vote. Conte's name was not among them. On that day he learned that he had not been reappointed, and, on the following day, he informed a newspaper reporter that he was hiring a lawyer to fight his not having been reemployed by the committee, and his wife notified the superintendent's office of Conte's injury and that he would be absent from school for about a week. He was in fact absent from April eighth to April twenty-second.

On April ninth, the superintendent, at the direction of the chairman of the committee, caused two identical let-

---

[4] General Laws c. 71, § 41, as amended through St. 1973, c. 847, § 6, set forth in n. 3 herein, refers specifically to the reappointment of teachers, not principals. However, it has been decided that a principal is simply a teacher entrusted with special duties or management. *Boody* v. *School Comm. of Barnstable,* 276 Mass. 134, 138 (1931). *McDevitt* v. *School Comm. of Malden,* 298 Mass. 213, 214 (1937). *Downey* v. *School Comm. of Lowell,* 305 Mass. 329, 331 (1940). *McCartin* v. *School Comm. of Lowell,* 322 Mass. 624, 627 (1948). While G. L. c. 71, § 42A, as appearing in St. 1953, c. 269, recognizes a distinction between tenured principals and tenured teachers with respect to protection afforded against changes in duties, untenured principals are treated in the same manner as untenured teachers for other purposes. See *Dimlich* v. *School Comm. of Andover,* 344 Mass. 643, 647 (1962).

[5] This letter, while received by Conte before April 15, did not constitute notice under G. L. c. 71, § 41, because the school committee had not yet officially voted not to rehire Conte. See *Bonar* v. *Boston,* 369 Mass. 579, 581-582 (1976).

ters to be posted to Conte notifying him that he had not been reappointed for the following year. One was mailed to his home, the other to his school address. They were posted special delivery, certified mail, return receipt requested, deliver to addressee only. The letter to his home arrived there by messenger on April tenth (five days prior to the statutory deadline, see n.3).

The judge found that "[p]etitioner was at home in bed and his wife, who responded to the door, told the special delivery messenger that she would not awaken her husband to accept the . . . letter, but that she would sign for it. The special delivery messenger would not accept her signature since the receipt called for delivery only to the addressee. He therefore left a notice to call for the mail at the Post Office. Petitioner's wife placed this notice on a counter and forgot to bring it to her husband's attention."

The notice mailed to Conte's school address was returned unclaimed. On April seventeenth, Conte received another notice from the post office marked "Second Notice" with respect to the letter which had been brought to his home on April tenth. He, personally, picked up the letter at the post office on April nineteenth.

The judge concluded that Conte "at no time or in any manner, attempted to avoid, prevent or frustrate the delivery of the notice sent to him." He ruled that notice, as required by § 41 (n.3), that Conte was not to be employed for the following school year was not "given" to him in writing on or before April 15, 1974, and that Conte "be deemed to be appointed as principal" to serve at the discretion of the committee.[6]

The notice provision of § 41 has not been specifically construed. Without deciding the point, we assume the cor-

---

[6] On October 8, 1974, a judgment was entered nunc pro tunc effective August 26, 1974, the date of the entry of the judge's order for judgment. That judgment decreed that Conte be appointed as principal to serve at the discretion of the committee. On December 5, 1974, an amended judgment was entered without amplification, also effective as of August 26, 1974, that Conte be appointed a teacher to serve at the discretion of the committee. Neither party has questioned this amendment on appeal, and we do not discuss it.

rectness of the judge's ruling that notice is "given" only when received by the person to whom it is directed within the time prescribed.[7] Nonetheless, with deference to the judge's opportunity to see and hear the witnesses and on the basis of our consideration of the evidence as a whole, we are left with the conviction that a mistake has been committed and that the judge erred in his conclusion that Conte did not seek to avoid delivery of the committee's notice. *United States* v. *United States Gypsum Co.* 333 U. S. 364, 395 (1948). *McAllister* v. *United States,* 348 U. S. 19, 20 (1954). The background of demonstrated concern and activity shown by both Contes directed toward the retention of Conte's job casts grave doubt upon their version of Mrs. Conte's meeting with the messenger who sought to deliver the notice from the committee on April 10, as well as her forgetfulness of the notice left by the messenger for her husband. Conte did not at trial or on appeal contend that he or his wife was unfamiliar with the notice requirement of § 41.

---

[7] Other Massachusetts statutes dealing with notice have been interpreted strictly. *Regan* v. *Atlantic Ref. Co.* 304 Mass. 353, 354 (1939). *Ferreira* v. *Gross,* 323 Mass. 175, 177 (1948). *Rooney* v. *Ludlow Mfg. & Sales Social & Athletic Club, Inc.* 330 Mass. 340, 342 (1953). *Perry* v. *Medeiros,* 369 Mass. 836, 842-843 (1976) (requiring notice of a claim under G. L. c. 84, § 18, in "snow and ice" cases to be given within thirty days of an accident). It is to be observed that § 18 was amended by St. 1973, c. 1085, to provide that lack of notice shall not be a defense "unless the defendant proves that he was prejudiced thereby." No such flexible language appears in G. L. c. 71, § 41. See *Old Colony R.R.* v. *Assessors of Quincy,* 305 Mass. 509, 513 (1940) (requiring application for tax abatements under G. L. c. 59, § 59, to be received by October 1), and *Costello* v. *Board of Appeals of Lexington,* 3 Mass. App. Ct. 441, 442-443 (1975) (requiring that notice of appeal from a decision of the town board of appeals under G. L. c. 40A, § 21, as amended through St. 1972, c. 334, be received within twenty days of the decision). Cf. *Schulte* v. *Director of the Div. of Employment Security,* 369 Mass. 74, 79 (1975), and *Pierce* v. *Board of Appeals of Carver,* 369 Mass. 804, 807-808 (1976) (allowing "relatively innocuous" missteps in appeal procedures). Cases in other jurisdictions construing teacher notice statutes similar to G. L. c. 71, § 41, are divided as to whether timely mailing by the school board suffices or whether notice must actually be received by the teacher by the requisite date. Compare, for example, *Ledbetter* v. *School Dist. of El Paso,* 163 Colo. 127 (1967), with *Flanders* v. *Waterloo Community Sch. Dist.* 217 N.W.2d 579 (Iowa 1974).

It is apparent from the testimony of the Contes themselves that Conte was not immobilized following his injury on the fifth, and therefore could have retrieved the letter from the post office prior to the fifteenth. Interviews between him and a committee member, the superintendent and the reporter all took place following his injury. He testified that he was not confined to his home, and his wife related that she acted as his chauffeur for about three weeks following the injury. Between the ninth of April and the twenty-second, he did not see a doctor.[8]

It is settled that the party to a transaction, whose rights are liable to be injuriously affected by notice, cannot wilfully shut his eyes to the means of acquiring knowledge which he knows are at hand and thus escape the consequences which would flow from the notice had it been actually received. See *The Lulu,* 77 U. S. 192, 201-202 (1869); *NLRB* v. *Local 3, RWDSU,* 216 F.2d 285, 288 (2d Cir. 1954); *NLRB* v. *Regal Aluminum, Inc.* 436 F.2d 525, 527-528 (8th Cir. 1971); *Commonwealth* v. *Olivo,* 369 Mass. 62, 69 (1975).[9]

Accordingly, the judgment is reversed and a new judgment is to be entered declaring that Conte was not appointed to serve as a teacher for the school year 1974-1975 at the discretion of the committee.

*So ordered.*

---

[8] Mrs. Conte related that Conte saw the doctor twice, once on April eighth, three days after his injury, and again on April twenty-third.

[9] In light of our disposition of the case we do not reach the defendants' contention that the judge abused his discretion in denying (without an evidentiary hearing) their posttrial motion under Mass.R.Civ.P. 60(b)(2) and (3), 365 Mass. 828, supported by affidavits of two postal employees, bearing on the testimony of Mrs. Conte with respect to the attempted delivery of the letter on April tenth.