KAREN L. MacNUTT *vs.* POLICE COMMISSIONER OF
BOSTON.

No. 89-P-276.

Suffolk. May 14, 1990. - June 5, 1991.

Present: PERRETTA, KASS, & JACOBS. JJ.

*Firearms. License. Regulation. Boston. Due Process of Law*, Vagueness of
statute. *Practice, Civil*, Appeal. *Municipal Corporations*, By-laws and
ordinances.

The requirement of a firing test focusing on the safe handling and profi-
cient firing of a firearm is a reasonable exercise, by a city's licensing
officer, of the statutory duty under G. L. c. 140, § 131, to ascertain that
an applicant for a firearms license is a "suitable person" to carry fire-
arms. [635]

In a civil action challenging the validity of a firing test for an applicant
seeking a firearms license, it was not clear error for the judge to find,
on the basis of the testimony of the licensing police officer who partici-
pated in devising the test, that "the firing test does allow the range
officer to make a judgment as to an applicant's ability to handle and
use a hand gun with safety and a minimum amount of competence"
where, although G. L. c. 140, § 131, does not require the licensing au-
thority to ascertain an applicant's skill at handling firearms, it also does
not prohibit a valid test for minimal competency, especially where, as
here, the applicant's firing of a handgun could be anticipated from the
statement of purpose submitted in support of the application. [635-636]

An applicant for a firearms license failed to show that the mechanics of a
firing test established by a city's licensing officer reflected an abuse of
the officer's discretion in carrying out his statutory duty under G. L.
c. 140, § 131. [636-637]

A "range fee" charged to an applicant for a firearms license to recover the
costs of the applicant's firing test was unlawful in the absence of any
authorization by ordinance. [637-638]

CIVIL ACTION commenced in the Superior Court Depart-
ment on July 27, 1982.

The case was heard by *John L. Murphy, Jr.*, J.

*Karen L. MacNutt*, pro se.

*Robert J. Carty* for the defendant.

JACOBS, J. When the plaintiff applied for renewal of her license to carry a firearm, she was required by the defendant's agents to take a firing test and to pay a range fee in addition to a license fee. She challenged the test and the additional fee in the Superior Court and, after a trial without jury, appeals from a judgment of that court declaring that (1) the requirement of a firing test was a proper exercise, by the defendant, of his statutory duty under G. L. c. 140, § 131, (2) the test was conducted in a way which was within the discretion of the defendant, (3) the policies, procedures and methods established by the defendant were not arbitrary or capricious, but were "well calculated to determine suitability and to protect the safety of the public," and (4) the establishment of a "range fee" by the defendant was a proper exercise of discretion. We conclude that the firing test is lawful, but that the range fee, lacking the authority of an ordinance, is not.

In 1982, the plaintiff, a resident of the city of Boston, applied to renew a license to carry a firearm which had been issued to her by the defendant under G. L. c. 140, § 131. The city of Boston, by ordinance (City of Boston Code, Ordinances, Title 14, § 450, cl. 120, as amended [1976]), had established a twenty-five dollar fee for the grant of a new license.[1] There is no provision in the ordinance for the payment of any other fee in connection with the application.

At the time of her renewal application, the plaintiff learned that the procedures for license grants had been changed and that she would be required to pass a firing test at the Moon Island firing range using a .38 caliber handgun provided by the defendant. She was also informed that she would be required to pay a range fee of six dollars for costs associated with the firing test. The plaintiff paid the range fee under protest.

---

[1] As of the time of the trial, the fee had been increased by ordinance to fifty dollars.

The firing test, which had been established by the defendant's licensing officer in 1981, required that a firing regimen[2] be followed and accuracy demonstrated. While grant of the license was conditioned on the attainment of a minimum score on the firing test, the written instructions to applicants stated that "[t]he emphasis is on safety," and that an applicant could be "disqualified for not handling the weapon safely." After she requested and was refused permission to provide alternate proof of firearms competency or to use her own handgun for the test, the plaintiff took and passed the test.[3] She thereupon paid the twenty-five dollar license fee.

At the time of the plaintiff's application, G. L. c. 140, § 131, as appearing in St. 1972, c. 415, stated in pertinent part:

> "The chief of police or the board or officer having control of the police in a city or town, or the commissioner of public safety, or persons authorized by them, respectively, after an investigation, may, upon the application of any person. . . residing or having a place of business within their respective jurisdiction, except [certain minors, aliens, felons and persons convicted of drug offenses], issue a license to such applicant to carry firearms in the commonwealth. . . if it appears that he is a suitable person to be so licensed, and that he has good reason to fear injury to his person or property, or for any other proper purpose, including the carrying of firearms for use in target practice only. . . ."[4]

---

[2]Applicants were required to fire thirty rounds at a bulls-eye target with graded rings — twelve rounds were to be fired from a distance of seven yards and eighteen rounds from a distance of fifteen yards. Some of the rounds had to be fired "double action, with a one hand hold."

[3]The plaintiff filed this action and was denied injunctive relief before taking the test. We conclude, as did the judge, that this case involves issues "capable of repetition, yet evading review," and, therefore, should not be treated as moot. See *Wolf* v. *Commissioner of Pub. Welfare*, 367 Mass. 293, 298-299 (1975).

[4]An initial license is issued for a period of not less than four years and not more than five years from the date of issue. A renewed license also expires no less than four years nor more than five years after its effective

The plaintiff, in her application, indicated her reasons for wishing to carry arms to be "protection of life and property, collecting, target, and all other proper purposes."

*The firing test.* "The goal of firearms control legislation in Massachusetts is to limit access to deadly weapons by irresponsible persons." *Ruggiero* v. *Police Commr. of Boston*, 18 Mass. App. Ct. 256, 258 (1984). Among the principal measures adopted in furtherance of that goal are the provisions of G. L. c. 140, § 131, governing the licensing of persons to carry firearms. *Id.* at 258-259. That statute, in addition to excluding certain defined classes of persons, requires, before a license is issued, that the licensing authority ascertain that an applicant is a "suitable person" to carry firearms and has a "proper purpose" for doing so. *Id.* at 259. These statutory requirements do not present any question of infringement of any protected property right or liberty interest. *Commonwealth* v. *Davis*, 369 Mass. 886, 888 (1976). *Chief of Police of Shelburne* v. *Moyer*, 16 Mass. App. Ct. 543, 547 (1983).

As the officer having control of the police in the city of Boston, the defendant is the licensing authority under G. L. c. 140, § 131, and specifically is empowered to perform duties relating to licensure. St. 1962, c. 322, §§ 1(7) and (13). He has been given "considerable latitude" in the performance of his task. *Ruggiero, supra* at 259. The grant to him, without guidelines, of the general power and responsibility of determining a person's suitability to carry firearms necessarily includes any incidental power reasonably related to effectuating the purposes of the granting statute. *Commonwealth* v. *Slocum*, 230 Mass. 180, 192 (1918). *Town Taxi Inc.* v. *Police Commr. of Boston*, 377 Mass. 576, 586 (1979). As a general proposition, we conclude that the imposition of a test focusing on the safe handling and proficient firing of a firearm is not an unreasonable exercise of that power.

The plaintiff introduced considerable expert evidence questioning the validity of the firing test in question. The judge,

---

date. Although G. L. c. 140, § 131, has undergone several amendments since the date of the plaintiff's application, the substance of the quoted portion has not changed.

however, chose to give greater credit to the testimony of the licensing police officer who participated in devising the test. It was not clear error for him to find on the basis of that testimony that "the firing test does allow the range officer to make a judgment as to an applicant's ability to handle and use a handgun with safety and a minimum amount of competence."

Although G. L. c. 140, § 131, "does not require the licensing authority to ascertain an applicant's skill at handling firearms," *Sampson* v. *Lynn*, 405 Mass. 29, 32 n.3 (1989), it also does not prohibit a valid test for minimal competency, especially where the applicant's firing of a handgun reasonably can be anticipated from the statement of purpose submitted in support of an application to carry. We do not venture any opinion as to the validity of such testing in circumstances in which the license to carry is solely for a limited purpose not likely to involve firing, such as collecting.[5]

The remaining question is whether the plaintiff has shown that the mechanics of the test reflected an abuse of discretion. The broad grant of discretion implicit in a statute which lacks guidelines[6] "may be limited properly by judicial interpretation" to measures which are not arbitrary or capricious. *Caswell* v. *Licensing Commn. for Brockton*, 387 Mass. 864, 874 (1983). The plaintiff argues that by requiring that a .38 caliber handgun be used in the test and that it be fired "double action," the defendant discriminated capriciously against persons with small hands, particularly women. While her evidence established that these requirements created some firing difficulties for her, the plaintiff failed to support

[5]At least three States have enacted statutes requiring that firing proficiency be demonstrated in connection with certain applications to carry firearms. See Minn. Stat. § 624.714 § 5(b) (1990); N.D. Cent. Code, § 62.1-04-03(1)(c) (Supp. 1989); and R.I. Gen. Laws § 11-47-15 (1981). Florida permits competence to be demonstrated by proof of completion of any of several designated courses or by proof of "equivalent experience with a firearm." Fla. Stat. § 790.06, (2)(h) 5 (1989).

[6]The suggestion by this court that a statutory statement of guidelines and restrictions might be helpful has not yet stimulated legislative action. See *Ruggiero* v. *Police Commr. of Boston, supra* at 261 n.7.

the notion that such difficulties caused or were likely to cause her, or any other applicant, to be denied a license.

In the course of his testimony, the commanding officer of the licensing unit of the Boston police department stated that he, as a matter of discretion, determined on the basis of proffered credentials that some applicants qualified to be licensed without testing. The plaintiff did not allege arbitrary and selective application of the test in her complaint. She now argues that it was error for the judge not to declare the firing test to be invalid on the ground that it was selectively applied. The record contains no indication of the issue of selective testing having been addressed by the parties at trial. It was, therefore, well within the judge's discretion not to issue a specific declaration on the subject.[7] G. L. c. 231A, § 1. *National Shawmut Bank* v. *Morey*, 320 Mass. 492, 497 (1946). *Brown* v. *Neelon*, 335 Mass. 357, 361 (1957). Moreover, "a nonjurisdictional issue not presented at the trial level need not be considered on appeal." *Royal Indem. Co.* v. *Blakely*, 372 Mass. 86, 88 (1977).

*The range fee.* Except for certain licenses not pertinent to this decision, the city of Boston is authorized to establish by ordinance "the fees for all licenses and permits granted under the authority of statutes . . . and may likewise fix the charges to be paid for any services rendered or work performed by the city or any department thereof, for any person or class of persons. . . ." St. 1949, c. 222, § 1. The range fee here involved was established by the Boston police department on May 26, 1981. The defendant does not contend that it was in any way authorized by ordinance. Absent such authorization, the range fee is unlawful because the power of the city of Boston to charge for the services attendant to the issuance of a license to carry a firearm derives solely from St. 1949, c. 222, and may be exercised only by ordinance. *Mosey Cafe, Inc.* v. *Licensing Bd. for Boston*, 338 Mass. 199, 204

---

[7]The judge's findings specifically were addressed to whether the firing requirement was within the defendant's authority and whether it was a valid test of suitability. We, therefore, determine that his declaration of lack of arbitrariness was limited to the issue of the suitability of the test.

(1958). It is no answer to suggest, as does the defendant, that the range fee is not a tax but a measure designed to recover the costs of the firing test. Indeed, the central purpose of any duly promulgated license fee, such as the twenty-five dollar fee here imposed, is the recovery of "the reasonable expenses incident to the licensing." *Opinion of the Justices*, 250 Mass. 591, 602 (1925).

Accordingly, paragraph 1 of the judgment is vacated and the matter is remanded to the Superior Court for modification of the judgment to declare that the range fee implemented by the defendant on May 26, 1981, was established without proper authority and, therefore, was invalid. The remainder of the judgment is affirmed.

*So ordered.*