## POLICE COMMISSIONER OF BOSTON *VS.* LARRY ROBINSON & another.[1]

No. 97-P-1584.

Suffolk. March 9, 1999. - September 21, 1999.

Present: PERRETTA, PORADA, & LENK, JJ.

*Firearms. License. Practice, Civil,* Action in nature of certiorari, Judicial review of license to carry firearms. *Statute,* Construction. *Notice. Mail.*

A notice of revocation of a license to carry firearms, sent by certified mail and returned unclaimed, was not, on the record presented in an action in the nature of certiorari in Superior Court, sufficient to satisfy the actual notice requirement set forth in G. L. c. 140, § 131; consequently, the licensee's appeal for review in the Boston Municipal Court was timely, where it was filed within forty-five days of the date on which he received actual notice of the revocation. [771-775]

Where the plaintiff in an action in Superior Court in the nature of certiorari failed to file the record of the proceedings below, no issue with respect to the exclusion of proffered evidence in that proceeding was preserved for review in the Superior Court or on appeal. [775]

CIVIL ACTION commenced in the Superior Court Department on May 28, 1996.

The case was heard by *David M. Roseman,* J.

*Gary E. Lambert* for Larry Robinson.

*Jed M. Nosal* for the plaintiff.

LENK, J. For almost ten years the appellant Larry Robinson held a license to possess and carry firearms for the purpose of target practice. This case has its genesis in the Boston police commissioner's revocation of that license on September 11, 1995, and in the notice the commissioner sent Robinson of that revocation. Under the pertinent provisions of G. L. c. 140, § 131, then in effect,[2] the commissioner was required to send

---

[1]The Boston Municipal Court.

[2]As amended by St. 1996, c. 151, §§ 327 and 328.

Robinson written notice of the revocation and his reason for revoking it. That notice was to be delivered "by hand or any other means necessary to effectuate notification to the licensee." The commissioner sent notice by certified mail on September 11, 1995, which was returned to him unclaimed about a month later. In response to an inquiry Robinson's attorney had made earlier in 1995, he was informed on January 30, 1996, that Robinson's license had been revoked and of the commissioner's effort to serve Robinson by certified mail in September and October of 1995.

Robinson appealed from the revocation on February 29, 1996. The pertinent portion of G. L. c. 140, § 131, provides that a person whose license has been revoked may file a petition for judicial review in Boston Municipal Court "within forty-five days of notification of said revocation." If the date of notification was either the day the commissioner sent notice by certified mail, September 11, 1995, or the last date delivery was attempted, October 10, 1995, Robinson's appeal was untimely. If, however, Robinson was not notified until January 30, 1996, his appeal was timely. The Boston Municipal Court judge ruled that notification occurred on January 30, 1996. The Superior Court judge reviewing the matter pursuant to an action brought by the commissioner in the nature of certiorari disagreed, concluding that notification had occurred in the fall of 1995 and that Robinson's appeal was untimely. That is the nub of the matter now before us.

*Background.* Robinson, at the time a sixty year old long time Boston homeowner and security guard, held a license to possess and carry firearms for the purpose of target practice from 1985 until February 13, 1995, when he was arrested by Boston police officers for gun related offenses.[3] Robinson left his Roslindale home that day planning to go target shooting in Braintree. While in his driveway inspecting damage to his truck, Robinson was confronted by a local gang member, Miguel Montanez. Robinson suspected Montanez of having damaged the vehicle after Robinson ordered Montanez the previous evening to leave the first floor apartment in Robinson's home. Montanez barraged Robinson loudly with threats to his home and family and refused to leave the Robinson yard. Police arrived to find Robinson pointing his handgun at Montanez.

---

[3]Unlawful possession of a firearm and assault by means of a dangerous weapon. At the time of arrest, police seized Robinson's firearms license and his gun. The license was suspended on February 15, 1995.

The criminal charges against Robinson were subsequently dismissed by a judge of the West Roxbury District Court, who ordered police on May 8, 1995, to return Robinson's gun and license; only the gun was returned. Four months later, on September 11, 1995, the commissioner's licensing unit revoked Robinson's license because he was determined not to be a "suitable person" to carry a firearm. Notice was sent that day by certified mail and was returned to the licensing unit on October 16, 1995, the envelope indicating that the letter was unclaimed, with delivery having been attempted on September 13 and October 10, 1995. On January 30, 1996, counsel for the commissioner responded to written inquiry from Robinson's lawyer earlier in 1995 concerning the license, informing Robinson's lawyer that the license had been revoked on September 11, 1995, and copying him with the written notice, unclaimed envelope and receipt for certified mail attached to that notice.

Robinson filed a petition for judicial review in Boston Municipal Court on February 29, 1996. The commissioner moved to dismiss the petition as untimely. After an evidentiary hearing, the judge issued written findings of fact and rulings of law. He denied the motion to dismiss, ruling that the commissioner had not presented "any credible evidence to show that [Robinson] was ever notified of the revocation of his license before January 30, 1996." As to the merits of Robinson's petition, the judge ruled that Robinson had produced substantial evidence to show that he was a proper person to hold a license to carry a firearm, that the police investigation was inadequate to support an informed decision to revoke Robinson's license for cause, that there was no reasonable ground for the revocation of that license, and that the commissioner's action was arbitrary and capricious. The judge reinstated Robinson's license.

The commissioner sought review in the Superior Court by means of an action in the nature of certiorari pursuant to G. L. c. 249, § 4. His complaint alleged that the judge had erred as matter of law in denying the commissioner's motion to dismiss and in finding that the license revocation was arbitrary and capricious. The commissioner also claimed error in the judge's exclusion of hearsay evidence offered to contradict Robinson's account of the February, 1995, incident. The Superior Court judge stayed the Boston Municipal Court judgment, and ordered the commissioner to file a record of the proceedings before the Municipal Court sufficient to determine the issue of excluded

hearsay evidence within thirty days. The commissioner failed to comply. Based on the record that was before him, the Superior Court judge subsequently concluded that Robinson had notice of the attempts at service made upon him by certified mail in the fall of 1995 and that the commissioner had thereby satisfied the statutory notice requirement for license revocation set forth in G. L. c. 140, § 131. Robinson's appeal was accordingly untimely and, in light of this ruling, the judge did not reach the merits, including the commissioner's allegation concerning improperly excluded hearsay evidence.

Robinson appeals from the Superior Court judgment, asserting error in two respects. First, he claims that the Superior Court judge exceeded the scope of an action in the nature of certiorari, either because he reversed a fact finding made by the Boston Municipal Court judge or because any error of law by the Boston Municipal Court judge was insubstantial and did not adversely affect material rights. Second, he contends that notice sent by certified mail and returned unclaimed to the sender is insufficient to satisfy the statutory notice requirement for license revocations set forth in G. L. c. 140, § 131.

*Discussion.* We need not linger long over Robinson's contention that the Superior Court judge exceeded the scope of an action in the nature of certiorari. It is certainly true that the function of a court acting pursuant to G. L. c. 249, § 4, is "not to reverse or revise findings of fact but to correct errors of law." *Johnson Prods., Inc.* v. *City Council of Medford*, 353 Mass. 540, 541 n.2, cert. denied, 392 U.S. 296 (1968). The reviewing judge is limited to what is contained in the record of proceedings below, and it is settled that "[t]he standard of review in an action in the nature of certiorari is 'to correct substantial errors of law apparent on the record adversely affecting material rights.' " *MacHenry* v. *Civil Serv. Commn.*, 40 Mass. App. Ct. 632, 634 (1996), quoting from *Commissioners of Civil Serv.* v. *Municipal Ct. of Boston*, 369 Mass. 84, 90 (1975).

To the extent that Robinson suggests that the commissioner may not seek, by means of an action under G. L. c. 249, § 4, judicial review of a judgment entered pursuant to G. L. c. 140, · § 131, ordering a firearms license to be restored to an individual whom the commissioner thinks unsuitable, Robinson is incorrect. See *Chief of Police of Shelburne* v. *Moyer*, 16 Mass. App. Ct. 543 (1983). While it is true that "[a] writ of certiorari will not issue for errors 'which have not resulted in manifest injustice

to the petitioner or which have not adversely affected the real interests of the general public,' " *W.J. Manning, Inc.* v. *Boston Traffic & Parking Commn.*, 350 Mass. 24, 26 (1965) (citations omitted), the real interests of the public may very well be adversely affected when a firearms license is erroneously reinstated.

" 'The goal of firearms control legislation in Massachusetts is to limit access to deadly weapons by irresponsible persons.' *Ruggiero* v. *Police Commr. of Boston*, 18 Mass. App. Ct. 256, 258 (1984). Among the principal measures adopted in furtherance of that goal are the provisions of G. L. c. 140, § 131, governing the licensing of persons to carry firearms. *Id.* at 258-259." *MacNutt* v. *Police Commr. of Boston*, 30 Mass. App. Ct. 632, 635 (1991). Robinson's contention that an erroneous reinstatement of a firearms license to an unsuitable person does not adversely affect material rights flies in the face of the goal of G. L. c. 140, § 131, i.e., "to limit access to deadly weapons by irresponsible persons," see *ibid.*, and is accordingly without merit.

The question before us, then, is whether the Superior Court judge erred in reversing the Boston Municipal Court judgment on the basis that Robinson's appeal of his license revocation to the Boston Municipal Court under G. L. c. 140, § 131, was untimely. In concluding that the appeal was untimely, the Superior Court judge determined both that a revocation notice sent by certified mail meets the statutory notice requirement of G. L. c. 140, § 131,[4] and that the revocation notice sent to Robinson by certified mail, but returned to the commissioner as unclaimed, satisfied that notice requirement. Robinson claims on appeal that each determination was error as matter of law.

[4]General Laws c. 140, § 131, states, in relevant part,

"All such licenses to carry firearms shall be revocable for cause at the will of the authority issuing the same, who shall forthwith send written notice stating the reason that said license is being revoked by hand or any other means necessary to effectuate notification to the licensee and executive director of the criminal history systems board. . . .

"Any person whose license is so revoked, may within forty-five days of notification of said revocation, file a petition to obtain judicial review in the district court having jurisdiction in the city or town wherein the applicant held such license, and a justice of said court, after having heard all of the facts, may direct the license be reinstated if

We consider each in turn.

General Laws c. 140, § 131, sets forth four separate and increasingly more stringent notice requirements.[5] First, an applicant for firearms license or renewal must be notified by the licensing authority of its decision in writing. Second, the authority must send notice of license expiration and a renewal form to the licensee by first class mail. Third, the license holder must notify named authorities of any change of address in writing by certified mail. Fourth, the requirement that concerns us here, the licensing authority must notify a license holder whose license is being revoked of that action "by hand or any other means necessary to effectuate notification to the licensee and executive director of the criminal history systems board."

If notice of license revocation is not to be made by hand, presumably the epitome of means sufficient to effectuate notification, it must be made by other means sufficient "to effectuate notification." "Effectuate" is defined as "to bring about; effect." American Heritage Dictionary 439 (2d ed. 1982). We think the statutory phrase "other means necessary to effectuate notification" means that the licensee must receive the written notice and not just that the commissioner send it. "In

he finds there was no reasonable ground for revoking said license."

Although the Legislature rewrote G. L. c. 140, § 131, in 1998 (St. 1998, c. 180, § 41; St. 1998, c. 358, §§ 6-9), the 1996 version was in effect at all pertinent times and governs this appeal.

[5]General Laws c. 140, § 131, provides the following notification requirements in addition to the notification requirement at issue, set forth in note 4, *supra.*

"An applicant for a license or a renewal of a license under this section shall be notified by the licensing authority, in writing, within forty days of submitting said application, of either approval or denial and in the case of denial, such notice shall state the reasons thereof. . . .

"The executive director of the criminal history systems board shall send by first class mail to the holder of each such license to carry firearms, a notice of the expiration of his or her license not less than ninety days prior to such expiration, and shall enclose therein a form for renewal of said license. . . . Any license holder shall notify, in writing, the authority who issued said license, the chief of police into whose jurisdiction the license holder moves, and the executive director of the criminal history systems board of any change in his or her addresses. Such notification shall be made by certified mail within thirty days of its occurrence."

the absence of express provision to the contrary, a notice is not given until received by the person to be notified." *Costello* v. *Board of Appeals of Lexington*, 3 Mass. App. Ct. 441, 443 (1975), quoting from *Regan* v. *Atlantic Ref. Co.*, 304 Mass. 353, 354 (1939). Unless a statute provides expressly for other means of giving notice, such as mailing within a limited time period regardless of the time of receipt, notice is not given or effectuated without receipt. We note in this regard that of the four notice requirements set forth in G. L. c. 140, § 131, the first three do not require receipt but instead expressly require mailing by specified means within a time limited. It is only the fourth requirement which differs, contemplating in hand or comparable receipt of notification, an eminently sensible requirement in view of its dual purpose: notifying licensees that and why they are no longer licensed (and inferably that they must cease their use of firearms) and triggering the appeal period.

We agree with the Superior Court judge that certified mail can be a legitimate means of satisfying the statutory notice requirement for license revocations set forth in G. L. c. 140, § 131, but only if received by the licensee. The obvious virtue of certified mail is that it ordinarily provides proof of delivery and receipt of notice. See *Gerson Realty Inc.* v. *Casaly*, 2 Mass. App. Ct. 875 (1974); *Cinder Prod. Corp.* v. *Schena Constr. Co.*, 22 Mass. App. Ct. 927, 929 (1986). See also *Computune, Inc.* v. *Tocio*, 44 Mass. App. Ct. 489, 493 (1998). Here, however, there was no proof of receipt. Indeed, quite the contrary was the case, since the commissioner knew on October 16, 1995, that the notice letter was unclaimed and unread. The commissioner suggests, however, that the Superior Court judge was correct in ruling that the statutory notice requirement was nonetheless satisfied, calling our attention to *Commonwealth* v. *Hampton*, 26 Mass. App. Ct. 938 (1988), and to cases holding that one who wilfully evades service will be deemed to have received constructive notice. Neither avails him here.

*Commonwealth* v. *Hampton, supra*, involved a criminal prosecution for unlicensed possession of a firearm. The defendant raised the defense of a valid license and, pursuant to G. L. c. 278, § 7, bore the burden of proving that she held such a license. Hampton's license, however, had previously been seized and suspended because of earlier criminal involvement. The Commonwealth showed that notice of the license revoca-

tion had been sent to her by certified mail but had been returned unclaimed, presumably because she had moved ·twice without notifying authorities of her change of address as required by G. L. c. 140, § 131. In these circumstances, given Hampton's own failure to comply with statutory requirements, we held that Hampton had constructive notice of her license suspension and was accordingly neither deprived of due process of law nor entitled to a required finding of not guilty.

*Hampton* does not control the result here. To be sure, it suggests that there are instances when parties' own conduct will result in their being deemed to have received constructive notice. In this regard, *Hampton* is consistent with what a number of our cases hold.

> "It is settled that the party to a transaction, whose rights are liable to be injuriously affected by notice, cannot wilfully shut his eyes to the means of acquiring knowledge which he knows are at hand and thus escape the consequences which would flow from the notice had it been actually received."

*Conte* v. *School Comm. of Methuen*, 4 Mass. App. Ct. 600, 605 (1976). See *Commonwealth* v. *Olivo*, 369 Mass. 62, 69 (1975). In *Conte*, for example, a school principal claimed that his contract was not effectively terminated because he was not notified in writing by the date prescribed by statute. The evidence, however, including testimony as to the plaintiff's evasive actions and his apparent knowledge of the notice requirement, demonstrated that he had avoided delivery of notice sent by certified mail. He was accordingly held to have been constructively notified that the contract was terminated. See 4 Mass. App. Ct. at 604.

This line of authority would only assist the commissioner had he offered proof at the Boston Municipal Court permitting the judge to find that Robinson had purposefully or wilfully evaded notice of license revocation sent to him by certified mail. The record of proceedings before the Superior Court judge, however, is devoid of such evidence. All that is known is that delivery was attempted on two dates and that the letter was returned unclaimed. There was no evidence, for example, as to Robinson's whereabouts in that time period, and no evidence that Robinson was even aware, prior to his lawyer's receiving notice

on January 30, 1996, that delivery of the commissioner's certified mail letter had been attempted, let alone that Robinson evaded delivery and wilfully failed to claim the letter. Indeed, the Superior Court judge does not refer to the record in this regard but states in his decision only that "[i]n his memorandum, Robinson appears to admit that he received notice of certified mail, but did not claim that mail." This is insufficient. The memorandum he refers to is not part of our record on appeal, nor was it part of the record of proceedings before the Superior Court judge. "On a writ of certiorari, the court's review 'is confined to the record . . . .' " *Bielawski* v. *Personnel Administrator of the Div. of Personnel Admn.*, 422 Mass. 459, 464 (1996), quoting from *Gloucester* v. *Civil Serv. Commn.*, 408 Mass. 292, 297 (1990). The mere fact that a certified letter was unclaimed, absent evidence of awareness and ability to claim it or evidence of wilful disregard of it, does not permit the conclusion that the intended recipient wilfully evaded notice that his license was revoked. It does not warrant the conclusion that Robinson received constructive notice of the license revocation.

The Superior Court judge accordingly erred in concluding that the commissioner had satisfied the statutory notice requirements and that Robinson had received notice in the fall of 1995. Robinson's appeal was timely and it was error for the Superior Court to reverse the Boston Municipal Court judgment on this basis.

The commissioner requests that, should we conclude as we have that Robinson's appeal was timely, we remand the case to the Superior Court for findings on his claim that the Municipal Court judge committed error by excluding hearsay evidence. We decline to do so. The commissioner did not file with the Superior Court a record of the Boston Municipal Court proceedings pertinent to this claim as he had been ordered to do. Only had he done so could the Superior Court judge have ascertained whether the commissioner had preserved the point by making an offer of proof in the Boston Municipal Court. See *H.H. Hawkins & Sons Co.* v. *Robie*, 338 Mass. 61, 65 (1958). Nor does the record before us indicate any prejudice the commissioner might have suffered by the exclusion of the disputed hearsay evidence. Under these circumstances, we conclude that the commissioner failed to preserve the issue for review in both the Superior Court and this court.

The judgment of the Superior Court is reversed and the matter is remanded to the Superior Court for further proceedings not inconsistent with this opinion.

*So ordered.*