Agnes, Peter W., J.
This matter arises out of a decision by the defendants, Kevin McCormick, Alexander Fallavollita, Wayne M. Leblanc, Allen Phillips, and James Ryan, as they constitute the West Boylston Board of Selectmen (“the Board”) and the Town of West Boylston (“the Town”) to suspend the plaintiff, Classic Suites & Inns, Inc.’s (“Classic Suites”) Motel Operation Permit. The Board’s decision to suspend Classic Suites’ Motel Operation Permit was a result of its finding, by a preponderance of the evidence, that Classic Suites had not effectively nor in a timely manner dispersed or reported a congregation of minors engaged in the consumption of alcohol on Classic Suites property. The Board found that this act constituted an activity in violation of Classic Suites’ obligations as a licensee.
Following the suspension, Classic Suites filed a complaint with this Court seeking to overturn the Board’s decision under G.L.c. 249, Section 4 (certiorari). The matter is now before this court on the plaintiffs motion for judgment on the pleadings pursuant to Massachusetts Superior Court Standing Order 1-96. For the reasons that follow, the motion is DENIED and the complaint is dismissed.
BACKGROUND
The Home Rule Amendment (hereinafter “HRA”) allows cities and towns a broad grant of power regarding local matters. “Any city or town may, by the adoption of, amendment, or repeal of local ordinances or by-laws, exercise any power or function which the general court has power to confer upon it, which is not inconsistent with the constitution or laws enacted by the general court. . .” Mass. Const. Amend. Art. II, §6 (2005). Pursuant to this amendment, on May 17, 2004, the West Boylston Town Meeting voted unanimously to adopt a by-law authorizing the Board to issue Motel Operation Permits and promulgate regulations to implement the by-law. See Administrative Record (hereafter “AR”) p. 17.
The regulations require the owner or operator of any “motel” to obtain a Motel Operation Permit from the Board. AR p. 11. A Motel Operation Permit issued by the Board may be suspended or revoked for any of the reasons set forth in the by-law. AR p. 11-16. On August 18, 2004, the Board granted Classic Suites a Motel Operation Permit, subject to the provisions outlined in the by-law. AR p.. 20.
On October 10, 2004, Officer David Pupecki observed a large number of youths in the parking lot of the Classic Suites drinking alcohol from beer cans and plastic cups. AR p. 2. Officer Pupecki identified 24 persons at the scene and believed that approximately 10 others had left the scene based on information obtained from the youths. AR p. 3. While the police were on the scene, carloads of teenagers were still entering the parking lot, some of them managing to exit the premises before the police could apprehend them. Id. According to Officer Pupecki, the party lasted at least six hours and involved a large number of teenagers. Id. A fair reading of the record indicates that the Board made specific findings of fact that underage persons were consuming alcoholic beverages in and around the premises of Classic Suites and that they were observed entering and exiting the premises of Classic Suites. Id.
As a result of this incident, on November 19, 2004, the Board notified Classic Suites that it would hold a hearing for purposes of revoking, suspending or modifying plaintiffs Motel Operation Permit. AR p. 8. The hearing was held on December 8, 2004. AR p. 2. The Board found that the plaintiff violated sections 9(b),[1] 10(b),[2] 11(a),[3] and 11(b)[4] of the Motel Operation Permit Regulations. AR p. 5-6. The Board imposed a four-day license suspension commencing December 19, 2004, and ending on December 22, 2004. AR p. 50. The Board further required the plaintiff to submit a written report indicating that it had met with the local Police Department in order to implement a reasonable plan to address the issues and concerns with the operation of the licensed premises. AR p. 50-51.
On December 15, 2004, Classic Suites filed a Complaint in this Court, requesting that the Board be preliminarily enjoined from interfering with the operation of the hotel pending a final decision on the appeal. After the hearing, this matter was remanded to the Board for amendment of its decision to include the findings of fact upon which its decision was based. This matter is now before the Court on the plaintiff Classic Suites’ motion for judgment on the pleadings pursuant to Massachusetts Superior Court Standing *362 Order 1-96. For the following reasons, the motion is DENIED and the complaint is ordered DISMISSED.
DISCUSSION
The function of a court in a civil action in the nature of certiorari is not to reverse or revise findings of fact, but to correct errors of law. Police Comm’r of Boston v. Robinson, 47 Mass.App.Ct. 767, 770 (1999). The reviewing judge is limited to what is contained in the record of proceedings below. Id. The standard of review is “to correct substantial errors of law apparent on the record adversely affecting material rights.” MacHenry v. Civil Serv. Comm., 40 Mass.App.Ct. 632, 634 (1996). See also Mayor of Medford v. Judge of the First District Court of Middlesex, 249 Mass. 465 (1924) (Rugg, C.J.). “A decision is not arbitrary and capricious unless there is no ground which ‘reasonable men might deem proper’ to support it.” T.D.J. Dev. Corp. v. Conservation Comm’n of N. Andover, 36 Mass.App.Ct. 124, 128-29 (1994), quoting from Cotter v. Chelsea, 329 Mass. 314, 318 (1952). The court’s power on certiorari is not exercised to remedy mere technical errors that have not resulted in manifest injustice. See Chick’s Constr. Co. v. Wachusett Regional High Sch. Dist. Sch Comm., 343 Mass. 38, 41 (1961). Accord, Durbin v. Board of Selectmen, Kingston, 62 Mass.App.Ct. 1, 5 (2004), quoting Murray v. Second Dist. Ct. of E. Middlesex, 389 Mass. 508, 511 (1983) (certiorari review encompasses only those errors “which have resulted in manifest injustice to the plaintiff or which have adversely affected the real interests of the general public”). Among the legal errors that may be corrected in a proceeding in the nature of a Writ of Certiorari is administrative action that is not supported by at least some record evidence. See Commonwealth v. Hill, 392 Mass. 198, 201 n.5 (1984).[5]
Classic Suites’ complaint for judicial review asserts that the Board’s decision to suspend its Operation Permit is unlawful because (1) the regulation requiring the Operation Permit is invalid; and (2) the decision to suspend the Operation Permit is arbitraiy and capricious. Each of these claims is addressed below.
1. The Regulation Is Invalid
Plaintiffs first argument is based on the assertion that the Board did not have the authority to adopt the regulations. Acting under the “Home Rule Amendment” (HRA) to the Massachusetts Constitution, Mass. Cont. Amend. Art. II, §6 (2005), municipalities are free to exercise the power to make laws, unless specifically denied by their own charter, so long as they are not inconsistent with the constitution or laws enacted by the Legislature. As the Supreme Judicial Court has explained,
Municipalities may not adopt by-laws or ordinances that are inconsistent with State law. To determine whether a local ordinance is inconsistent with a statute, this court has looked to see whether there was either an express legislative intent to forbid local activity on the same subject or whether the local regulation would somehow frustrate the purpose of the statute so as to warrant an inference that the Legislature intended to preempt the subject.
Boston Edison Company v. Town of Bedford, 444 Mass. 775, 780-81 (2005) (citations omitted). See also Tri-Nel Management, Inc. v. Board of Health, 433 Mass. 217 (2001).
In order to ensure compliance with this principle, once a by-law is approved by Town Meeting, it is forwarded to the Attorney General of the commonwealth for review pursuant to G.L.c. 40, §32. That was done in this case and the by-law in question was approved. Thus, in the case at bar, under the HRA, the Board has the authority to enact the regulations, presuming there is no statute which precludes such action or other inconsistency with the Constitution of the Commonwealth.
In Bloom v. Worcester, 363 Mass. 136, 156 (1973), the court stated that “if the State legislative purpose [could] be achieved in the face of local ordinance or by-law on the same subject, the local ordinance or by-law [was] not inconsistent with the State legislation, unless the Legislature [had] expressly forbidden the adoption of local ordinances and by-laws on that subject”[6] (holding the city council adopted ordinance that created a human rights commission was valid under §6 of the HRA and §13 of the HRA because it did not thwart the legislative purposes of the state’s human rights laws). The court went on to say that absent clear statutoiy limitation, a municipality could act “unless the state legislation so broadly encompasse[d] the field as to indicate a clear intention to preempt the matter as an area of complete state concern . . .” Id. at 156 n. 15, quoting from E.A. Gere& M.P. Curran, Home Rule (Bureau of Pub. Affairs, Boston College and Bureau of Gov’t Research, Univ. of Mass.). Although the local Board of Health also may have the authority to regulate motels pursuant to G.L.c. 140, §32B, there is nothing in that section that clearly confines a municipality’s regulating authority to the Board of Health. Further, under §32B, the focus of the Board of Health is on matters related to health concerns. However, regulatory concerns, covering the broader scope of monitoring safety, appropriately belongs in the hands of the Board because of the variety of issues for which they are responsible.
As the by-laws and regulations promulgated by the Board are not inconsistent with the Constitution or legislation of the Commonwealth, the Board did not exceed its authority in adopting them and the regulations are valid.
2. The Decision to Suspend the Operation Permit Is Arbitraiy and Capricious
Arbitraiy and capricious agency action is “willful and unreasoning action without consideration and in disregard of facts and circumstances.” Delores Galeas v. Chelsea Housing Authority, 18 Mass. L. Rptr. 149, *363 Suffolk Sup. Ct. No. 03-5340F, quoting Long v. Comm'r of Public Safety, 26 Mass.App.Ct. 61, 65, review denied, 403 Mass. 1101 (1988). In the instant case, the police came across a large number of minors drinking on the plaintiffs property, and, judging from the amount of alcohol seized and number of underage drinkers present, reasonably inferred that the party had been going on for some time. The Board found, based on the first-hand observations made by Officer Pupecki, that a number of persons he reasonably believed to be underaged drinkers of alcoholic beverages were going into and coming out of the Classics Suites without restriction. These people were arriving and leaving in automobiles. The regulations enacted by the Board of Selectmen for the Operation Permit were instituted with the purpose of preserving public safety. It is reasonable that the Board and the Town would have significant concerns about public safely and general municipal liability in conjunction with the plaintiffs actions, or lack thereof. Where, as here, a decision is supported by substantial evidence in the record, it is not arbitrary or capricious as a matter of law. Barley, supra, 19 Mass. L. Rptr. 73, citing Cherubino v. Board of Registration, 403 Mass. 350, 359 (1988).
The record fails to support a finding that the suspension of Classic Suites’ Motel Operation Permit was arbitrary, capricious or erroneous, as a matter of law, or exceeded the lawful authority of the Board.
ORDER
It is hereby ORDERED that the plaintiff Classic Suites’ motion for judgment on the pleadings is DENIED. The complaint is DISMISSED.

 §9(b) requires every license holder and manager to: a) obey these regulations and all state and local laws and regulations; b) promptly notify police of any disturbances or illegal activity on the licensed premises of which the manager becomes aware; c) cooperate fully with authorized agents of the Board, including but not necessarily limited to, any police officer of the Town of West Boylston, the Town Administrator or the Town Administrator’s agent, in the event of an investigation or inspection of the licensed premises. AR p. 5-6.

 § 10(b) requires a license holder to act reasonably and diligently to disperse loiterers or patrons who attempt to congregate in front of the licensed premises in an unauthorized manner. AR p. 6.

 § 11(a) requires a license holder to make all reasonable and diligent efforts to ensure that illegal activities do not occur on the licensed premises, and requires the license holder specifically to frequently monitor restrooms and other nonpublic areas of the premises for signs of drug activity or other illegalities. Id.

 § 11(b) prohibits any disorder, prostitution, illegal gambling, illegal drug use or sales or possession, or other illegal activity on the licensed premises or any premises connected therewith. Id.

 Judicial review under G.L.c. 249, §4, is similar to judicial review pursuant to G.L.c. 30A, §14.

 The record establishes that the Attorney General had approved the regulation in this case.