Kinder, C. Jeffrey, J.
Worcester Police Chief Gaty Gemme (“Chief Gemme”) brings this action in the nature of certiorari, under G.L.c. 249, §4 for review of a District Court decision reversing his revocation of Paul S. Ricciardi’s (“Ricciardi”) license to carry firearms under G.L.c. 140, §131. For the reasons set forth below, the District Court’s decision is AFFIRMED, Chief Gemme’s Motion for Judgment on the Pleadings is DENIED and Ricciardi’s Cross Motion for Judgment on the Pleadings is ALLOWED.
1.Procedural History
On January 30, 2006, Chief Gemme, acting in his capacity as the licensing authority for the City of Worcester, revoked Ricciardi’s license to carry a firearm. On March 3,2006, Ricciardi filed a complaint in the Worcester District Court seeking judicial review of the revocation of his license to carry firearms. On April 23, 2007, a hearing was held before District Court Judge Robert Gardner, Jr. Both parties introduced testimonial and documentary evidence. On May 14, 2007, Judge Gardner entered judgment in favor of Ricciardi and ordered reinstatement of his license to carry firearms. On September 9, 2008, Chief Gemme filed an action seeking review of Judge Gardner’s decision in the nature of certiorari pursuant to G.L.c. 249, §4.
2.Factual Background
After hearing, the District Court found the following relevant facts.
Ricciardi, age 52, is the owner of Ricciardi Bros. Construction, an employer of 25 people. He first received his license to carry a firearm at age 18. He has held the license continuously without incident until the revocation that is the subject of this action. Ricciardi and his wife, Debra Ricciardi, reside at 35 Bridge Street, Auburn, Massachusetts. The residence is in a relatively remote area. “DO NOT ENTER” and “KEEP OUT’ signs are posted and visible to anyone approaching the residence from the driveway.
The Ricciardi’s daughter, Ashley, age 20, had recently returned to the family residence to live. While living away from her parents, she had, on two separate occasions, sustained gunshot wounds. Her parents were concerned for her well being,
On January 8, 14 and 22, 2006, 3 men appeared uninvited at the Ricciardi residence in the early morning hours, confronted Ricciardi and announced that they intended to repossess a motor bike that belonged to Ashley Ricciardi. They were told by Ricciardi that they were trespassing and that they should leave the property. The men appeared again in a pick-up truck on January 29, 2006 and demanded the motor bike. Ricciardi told them that the lender had been contacted, that negotiations were ongoing and that they should leave the property. The three men left, but returned within five minutes and knocked forcefully on the door. Ricciardi’s wife was present with him at the time.
Ricciardi went to the bedroom, removed his handgun from a locked safe, went to the front door and opened it. Holding his handgun in his right hand at his side against his right leg, he again told the men to leave. The three males left the property and contacted the Auburn Police Department.
The three men reported to Officer Kuchnicki that Ricciardi pointed the firearm at them and threatened to kill them. Officer Kuchnicki took statements from the Ricciardis. Ricciardi denied that he pointed the firearm at the men and threatened to kill them. The District Court credited Ricciardi’s denial. Officer Kuchnicki requested Ricciardi’s license to carry and seized the firearm from a bedroom dresser drawer. The firearm was loaded without a trigger lock.
By letter dated January 30, 2006, Chief Gemme revoked Ricciardi’s license to carry a firearm. The letter stated:
On January 29, 2006 the Auburn Police Department responded to your residence for a report of an assault with a dangerous weapon. You threatened to shoot three individuals attempting to repossess a motorcycle and an ATV vehicle from your property. You pointed your firearm at them stating “I can shoot you and tell the police you broke into my house.” This incident demonstrates extremely poor judgment on your part. This department finds you are an unsuitable person to possess a firearms license.
The District Court held that “taking the record the Chief had before him when he issued the Revocation Notice on January 30, 2006, that his action of the revocation was an abuse of his discretion. In this matter, the Respondent did not find sufficient evidence to determine, in his reasonable judgment, that Ricciardi was an unsuitable candidate to possess a firearm due to the incident of January 29, 2006.”
3.Discussion
a. Revocation of a License to Carry a Firearm
Once a chief of police or licensing authority has issued a license’to cany a firearm under G.L.c. 140, §131, “it shall be suspended or revoked . . . upon the occurrence of any event that would have disqualified the holder from being issued such license or from having such license renewed.” G.L.c. 140, §131(f). The licensing authority has discretion to revoke or suspend such a license “if it appears that the holder is no longer a suitable person to possess such license.” G.L.c. 140, § 131 (f). In either case the licensing authority's decision shall be in writing and shall state the reasons therefor." G.L.c. 140, § 131 (f).
In order to direct that a license be reinstated over a chiefs revocation, a judge must “find that there was no reasonable ground for revoking said license.” Godfrey v. Chief of Police of Wellesley, 35 Mass.App.Ct. 42, 47 (1993). To warrant such a finding it must be shown that the revocation was arbitrary, capricious or an *67 abuse of discretion. Chief of Police of Shelburne v. Moyer, 16 Mass.App.Ct. 543, 546 (1983). The burden of making such a showing is on the licensee. Id.
b. Standard of Review
In Godfrey, the Appeals Court clarified the procedure for obtaining judicial review and described the nature of that review at both the District and Superior Court levels. The hearing before the District Court is not a de novo proceeding. The Court referred to the statutory language in §131 that described the relief open to an aggrieved party as one in the nature of a “petition to obtain judicial review.” “Judicial review” means a re-examination of a proceeding, already concluded, for the purpose of preventing a result which appears not to be based upon the exercise of an unbiased and reasonable judgment." Id. at 44. Under this standard, the District Court is not permitted to substitute its opinion about whether the license should or should not have been revoked for that of the chief of police or licensing authority. Godfrey, 35 Mass.App.Ct. at 45.
However, the review is clearly broader than the traditional scope of review in proceedings conducted pursuant to G.L. 30A, Sec. 14. The statute contemplates an evidentiary hearing at which a District Court judge must engage in credibility determinations. The aggrieved party has the burden of producing “substantial evidence” that the revocation was “arbitrary, capricious or an abuse of discretion.” Id. at 546. The weight and credibility accorded such evidence, however, is for the hearing judge in deciding the question of whether a chief had any reasonable ground for revoking the license. Id. at 547. The aggrieved party fails to meet his burden by simply demonstrating that the licensing authority weighed conflicting evidence and reached a result that the District Court would not reach if it were acting de novo.
Godfrey also clarified the nature of judicial review in the Superior Court. The Appeals Court held that a party aggrieved by a District Court decision does not have the right to appeal for a trial de novo, but is limited to a civil action in the nature of a writ of certiorari pursuant to G.L.c. 249, §4. The standard of review in such an action is to correct substantial errors of law evident from the record. Thus, a reviewing Superior Court does not weigh evidence, find facts, exercise discretion or substitute its own judgment. The function of a writ of certiorari is to correct errors of law apparent on the record and not reverse or review findings of fact. Police Comm’r of Boston v. Robinson, 47 Mass.App.Ct. 767, 770 (1999). The review is confined to the record and whether the decision is legally tenable and supported by substantial evidence.
c. Analysis
Here the District Court Judge heard and assessed the testimony of percipient witnesses called by both parties, much of which was not available to Chief Gemme at the time he made his decision to revoke Ricciardi’s license to carry a firearm. From that evidence he formed a conclusion about what happened at the Ricciardi residence that was significantly different than the conclusion reached by Chief Gemme. The District Court Judge specifically found that Ricciardi did not point his firearm at anyone and did not threaten to shoot anyone. Thus, the District Court Judge found that the complaining witnesses’ claims that they had been assaulted at gunpoint, the very claims that formed the basis for Chief Gemme’s decision that Ricciardi was unsuitable to carry a firearm, were untrue. The District Court Judge did not simply substitute his own judgment for Chief Gemme’s. Rather, he carefully analyzed all of the evidence at the hearing, including witness testimony not available to the Chief, and determined that there was no reasonable ground for the Chief to revoke Ricciardi’s license and that his decision, under the circumstances, was arbitrary, capricious or an abuse of discretion.
After a review of the entire record, I cannot conclude that there was a substantial error of law in the District Court’s judgment that there was no reasonable ground for Chief Gemme to revoke Ricciardi’s license. Accordingly, the judgment of the District Court is affirmed.
ORDER
For the reasons set forth above, it is hereby ORDERED that the plaintiffs motion for judgment on the pleadings is DENIED and the defendant’s cross motion for judgment on the pleadings is ALLOWED.